Theodore A. WESTON, Petitioner–
Appellee,

v.

Peg KERNAN, Warden, Respondent–
Appellant.

No. 94–15391.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 14, 1994.

Decided Feb. 24, 1995.

George F. Hindall III, Deputy Atty. Gen., San Francisco, CA, for respondent-appellant.

Bruce E. Cohen, Berkeley, CA, for petitioner-appellee.

Before: WALLACE, Chief Judge, PREGERSON and BEEZER, Circuit Judges.

Opinion by Judge BEEZER; Dissent by Chief Judge WALLACE.

BEEZER, Circuit Judge:

Petitioner Theodore Weston filed a petition for a writ of habeas corpus challenging his May 1990 state court conviction of forcible oral copulation. He contends that his conviction was barred by the Double Jeopardy Clause because the state trial court ended his first trial by declaring a mistrial without his consent and in the absence of manifest necessity.

The district court granted his petition on February 9, 1994. The district court had jurisdiction pursuant to 28 U.S.C. § 2254 and we have jurisdiction pursuant to 28 U.S.C. § 2253. We affirm.

I

Weston was charged with three counts of forcible oral copulation (Cal.Penal Code 288a(c)), one count of robbery (Cal.Penal Code § 212.5(b)), and kidnapping for the purpose of committing the offense (Cal.Penal Code § 667.8). He was also alleged to have a prior conviction for forcible oral copulation and two prior prison terms (Cal.Penal Code § 667.6(a) and § 667.5(b)).

Weston's first state trial began in March 1990. After four days of trial, the state trial court declared a mistrial without prejudice. Weston then moved to enter a plea of once in jeopardy and to dismiss the information. The state trial court denied this motion and Weston's petition for a writ of mandate to

the California Court of Appeal on the double jeopardy claim was also denied.

Weston's second trial resulted in a jury verdict of guilty on one count of forcible oral copulation. The jury could not reach a verdict on the other counts and the state trial court dismissed them upon a motion by the prosecution. In June 1990, Weston was sentenced to six years for forcible oral copulation, with a five year prior conviction enhancement, for a total sentence of 11 years.

Weston appealed this conviction to the California Court of Appeal arguing, inter alia, that the second trial placed him twice in jeopardy. The California Court of Appeal affirmed his conviction and the California Supreme Court denied his petition for review.

Weston then filed this habeas corpus action in October 1992. In January 1993, the district court ordered the State to show cause why a writ should not issue. After receiving responses from the parties, the district court granted the petition, ordering the State of California to release Weston from custody. The district court then granted the State's motion for a stay of Weston's release pending this appeal.

## II

The circumstances surrounding the mistrial are as follows. During the rebuttal phase of the first trial, the prosecutor proposed to call two witnesses who would testify solely to the issue of the defendant's address. The prosecutor represented that the witnesses were being called only for the purpose of relating statements made to them by Weston concerning where he resided. The first witness, Officer Miller, testified as follows:

Q. (By Cling, Prosecutor) Did you place Mr. Weston under arrest?

A. Yes, I did.

Q. For what?

A. For 470 which is a check fraud.

(R.T. 416.)

Defense counsel, Jeffrey Adachi, immediately objected and requested a mistrial. The state trial judge responded by striking the testimony and admonishing the prosecutor for transgressing the court's order. The court took the motion for mistrial under advisement. The next witness, Barry Briden, testified that he was a parole officer and knew Weston because he maintained a parole file on him. At the end of this testimony and after excusing the jury, the attorneys and the judge further discussed the mistrial matter. Adachi stated that he was moving for a mistrial because of the extraneous, irrelevant and prejudicial nature of the police officer's and parole agent's testimony. He asked the court to declare a mistrial sua sponte. The Court responded that it would not declare a mistrial sua sponte because jeopardy would attach. The Court then asked Adachi whether he was moving for a mistrial to which Adachi responded "yes."[1]

The judge took the motion under advisement and the court adjourned for the day. The next morning, Weston filed a written

---

1. The exact exchange is as follows:
Adachi: In any event, my position is that the court to [sic] declare a mistrial on its own motion due to—
Court: No, it is your motion, I don't make a motion. It is your motion, you want me to rule on your motion; Is that clear?
Adachi: Well, I am first asking the court to declare a mistrial.
Court: The court never declares a mistrial then you've got double jeopardy.
Adachi: That's right.
Court: Well, I am not declaring any mistrial because I don't have—don't try and trick courts into that.
Adachi: I am not trying to trick you.

. . . . .

Court: I don't declare mistrials. You can make a motion for a mistrial, I may grant the motion.

That I may do in which case there is no jeopardy attached. If I say it is a mistrial because of something that happens then it is double jeopardy, the defendant can't be charged. I think you know very well I don't intend to do that.

. . . . .

Adachi: Yes, but under certain circumstances, if the prosecution makes the error we are not at fault. I think it is proper for the defense to ask the court on its own motion to, I know what the court is going to do.
Court: In forty years I never heard of it but there is a lot of stuff I never heard of in my lifetime. All right, anyway you made a motion for mistrial, am I correct?
Adachi: Yes.
(R.T. 424–26.)

motion requesting "that the court declare a mistrial ... on the grounds that the prosecutor, Peter Cling, by his misconduct, goaded the defense into seeking the instant motion for mistrial." Weston sought the following relief:

> Accordingly, the defense requests that this court declare a mistrial in this matter based on prosecutorial misconduct, and hold that a further retrial in this matter is barred by the Double Jeopardy Clause.

> If the court decides not to declare a mistrial in this matter sua sponte, the defense respectfully requests that the Court give the jurors' the attached cautionary instructions.

After further discussion, the state trial court ordered a mistrial without prejudice, finding that the cumulative error of the police officer's and the parole agent's testimony was prejudicial to the defendant. Immediately after the mistrial was ordered, Adachi interrupted the court, explaining that he wanted to confer with Weston before the court declared the mistrial without prejudice. The judge responded that he had granted a defense motion for mistrial and that he no longer had jurisdiction over the case.

When Adachi reiterated his objections, the state trial judge stated that he was granting the oral motion made by Adachi on the previous day. Adachi responded that he had moved for a mistrial on only one ground and that ground was denied by the court. The court responded, "Counsel, it was your motion last night. I made it crystal clear because you tried to lay the onus on the Court. If you want to have the record read back—In any event sit down now and be quiet, you will sit down and be quiet, Mr. Adachi. This Court has no further jurisdiction over this case." (R.T. 440.)

## III

■■■ A district court's decision to grant or deny a petition for habeas corpus is reviewed de novo. *Thomas v. Brewer*, 923 F.2d 1361, 1364 (9th Cir.1991). Findings of fact by the state court are presumptively correct, 28 U.S.C. § 2254(d), and are reviewed under the clearly erroneous standard. *Id.*

## IV

Weston contends that the state trial judge declared a mistrial without his consent and without "manifest necessity" that a mistrial be declared. The State argues that the mistrial was declared pursuant to Weston's motion and that Weston consented to the mistrial. Alternatively, the State argues that manifest necessity required the mistrial.

■■■ Whether a defendant's right not to be placed in double jeopardy has been violated is reviewed *de novo*. *United States v. Lun*, 944 F.2d 642, 644 (9th Cir.1991). Factual findings concerning the conduct of the prosecutor are reviewed for clear error. *Id.*

## A

■■■ The Double Jeopardy Clause of the Fifth Amendment protects a person from being "twice put in jeopardy of life or limb" for the same offense. The Supreme Court has enumerated several purposes for this protection: (1) to ensure the finality of judgments in criminal cases; (2) to avoid compelling a defendant to live in a constant state of anxiety and insecurity attendant with successive prosecutions for the same offense; (3) to avoid giving the prosecution an unfair opportunity to retry the defendant using information gained from the first trial concerning the strengths and weaknesses of the State's case; (4) to ensure that the defendant's right to have his fate decided by the first jury empaneled is protected; and (5) to avoid the imposition of multiple punishments for the same offense. *United States v. DiFrancesco*, 449 U.S. 117, 127–29, 101 S.Ct. 426, 432–33, 66 L.Ed.2d 328 (1980); *United States v. Crotwell*, 896 F.2d 437 (10th Cir.1990). *See also Green v. United States*, 355 U.S. 184, 187–88, 78 S.Ct. 221, 223–24, 2 L.Ed.2d 199 (1957). For these reasons, upon declaration of a mistrial, retrial will only be permitted if the defendant consented to the mistrial or if the mistrial was caused by "manifest necessity." *Arizona v. Washington*, 434 U.S. 497, 505, 98 S.Ct. 824, 830, 54 L.Ed.2d 717 (1978); *United*

*States v. Perez,* 22 U.S. (Wheat. 9) 579, 580, 6 L.Ed. 165 (1824).

■ The critical question in Weston's double jeopardy claim is whether he consented to a mistrial without prejudice. Our overriding concern "is that the defendant retain primary control over the course to be followed" after judicial or prosecutorial error. *United States v. Dinitz,* 424 U.S. 600, 609, 96 S.Ct. 1075, 1080, 47 L.Ed.2d 267 (1976).

The State argues that Weston's initial oral motion for mistrial was unqualified and that even after the state trial court made clear that it would not grant a mistrial with prejudice, he persisted with the motion. The State further argues that while Weston did file a written motion for a mistrial with prejudice, he never expressly withdrew his oral motion or substituted the later motion for the prior one.

In contrast, Weston argues that he was seeking a mistrial with prejudice at all times. He states that the affirmative response to the state trial judge's question, "All right, anyway you made a motion for mistrial, am I correct?" was at best equivocal. He argues that his written motion on the following day made clear that he was only seeking a mistrial with prejudice. Finally, he argues that even if the state trial court was under the impression that Weston had consented to a mistrial without prejudice, this misunderstanding should have been dispelled when counsel for Weston immediately objected and sought to speak to Weston before the judge discharged the jury.

■ We hold that Weston did not consent to the mistrial and that the state trial court erred in declaring the mistrial without prejudice over defense counsel's repeated objections. A defendant's consent to mistrial may be inferred "only where the circumstances positively indicate a defendant's will-

ingness to acquiesce in the mistrial order." *Glover v. McMackin,* 950 F.2d 1236, 1240 (6th Cir.1991) (citation and internal quotes omitted). The circumstances of this case clearly indicate that the defendant did not acquiesce in the mistrial order.

■ The first exchange between the state trial judge and defense counsel may have been ambiguous because Weston did not explicitly limit his request to a mistrial with prejudice. While we could view this request for a mistrial as unqualified, the written motion on the following day made clear that Weston only desired a mistrial if jeopardy would attach.[2] If the state trial judge would not declare a mistrial with prejudice, Weston requested that the trial continue and that cautionary instructions be read to the jury. Even if we were to view the two motions as separate and distinct, one for a mistrial without prejudice and one for a mistrial with prejudice, the state trial judge wholly failed to determine whether the later written motion superseded and effectively revoked the earlier request. *See, e.g., Lovinger v. Circuit Court,* 845 F.2d 739, 744 (7th Cir.) (holding that previously made mistrial motion did not constitute consent to a mistrial declared later on other grounds), *cert. denied,* 488 U.S. 851, 109 S.Ct. 136, 102 L.Ed.2d 108 (1988); *United States v. Mastrangelo,* 662 F.2d 946, 950 (2d Cir.1981) (defendant may withdraw motion for mistrial, even if withdrawal is not explicit), *cert. denied,* 456 U.S. 973, 102 S.Ct. 2236, 72 L.Ed.2d 847 (1982).

■ Moreover, defense counsel's immediate and repeated objections demonstrate that Weston did not consent to the mistrial. This is not a case where a defendant impliedly consented to the mistrial because he had the opportunity to object to a mistrial declared sua sponte but failed to do so. *See United States v. Smith,* 621 F.2d 350, 351–52 (9th Cir.1980) (defense counsel's failure to object

---

2. The fact that Weston requested the judge to declare a mistrial sua sponte, so that jeopardy would attach, does not indicate that Weston did or would consent to a mistrial without prejudice. *See United States v. Huang,* 960 F.2d 1128, 1134 (2d Cir.1992) (no consent to a mistrial without prejudice when the defendants had moved only for a mistrial with prejudice); *Corey v. District Court of Vermont, Unit #1, Rutland Cir.,* 917

F.2d 88, 91 (2d Cir.1990) (no consent where defendant insisted that if mistrial was declared double jeopardy should attach and later requested that trial judge reconsider his decision to declare a mistrial). The proper inquiry is limited to consideration of whether Weston consented to or acquiesced in the mistrial that was in fact declared by the state trial judge.

to mistrial amounted to implied consent), *cert. denied,* 449 U.S. 1087, 101 S.Ct. 877, 66 L.Ed.2d 813 (1981); *United States v. Bates,* 917 F.2d 388, 393 (9th Cir.1990) (no consent when defendant has no opportunity to object to a mistrial declared sua sponte by the state trial judge). Quite the contrary, Weston's counsel strenuously objected to the mistrial. The state trial court's declaration of a mistrial over these objections deprived Weston of his right to retain primary control over the course of the proceedings. *See Dinitz,* 424 U.S. at 609, 96 S.Ct. at 1080.

Because Weston's written motion requested only that the judge declare a mistrial sua sponte and defense counsel immediately objected to the mistrial order, the state trial court was required to obtain Weston's consent to the mistrial in the manner that it was declared. The court could have easily accomplished this clarification by allowing defense counsel to confer with Weston before he discharged the jury. *See e.g., United States v. Huang,* 960 F.2d 1128, 1133 (2d Cir.1992) (after stating that it would not grant mistrial with prejudice, court gave defendants opportunity to withdraw their motion for mistrial); *United States v. Miller,* 742 F.2d 1279, 1284 (11th Cir.1984) (to ensure no double jeopardy problem after declaration of mistrial, judge obtained written waiver by defendant of any double jeopardy claim), *cert. denied,* 469 U.S. 1216, 105 S.Ct. 1194, 84 L.Ed.2d 340 (1985).

The mistrial declaration without Weston's clear acquiescence, deprived Weston of an opportunity to decide whether he wanted to allow the first jury empaneled decide his fate. *See Oregon v. Kennedy,* 456 U.S. 667, 673, 102 S.Ct. 2083, 2088, 72 L.Ed.2d 416 (1982) ("one of the principal threads making up the protection embodied in the Double Jeopardy Clause is the right of the defendant to have his trial completed by the first jury

empaneled to try him"). We hold that Weston did not consent to the mistrial.

**B**

▮▮▮ The question whether the mistrial was declared due to "manifest necessity" remains. The Supreme Court says that manifest necessity exists "when the ends of public justice would not be served by a continuation of the proceedings." *United States v. Jorn,* 400 U.S. 470, 485, 91 S.Ct. 547, 557, 27 L.Ed.2d 543 (1971). We must weigh the protections afforded by the Double Jeopardy Clause against society's interest in determining guilt or innocence, *Wade v. Hunter,* 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949), and we afford the state trial court discretion in evaluating the circumstances before it in deciding whether to declare a mistrial. *United States v. Bates,* 917 F.2d 388, 394 (9th Cir.1990).[3] The State bears the heavy burden of demonstrating the "high degree" of necessity required for a declaration of mistrial without the defendant's consent. *Arizona v. Washington,* 434 U.S. at 505–06, 98 S.Ct. at 830–31.

▮▮▮ In *Bates,* we established standards to be used in determining whether the state trial court properly exercised its discretion. First, "[w]hen an error certain to result in reversal occurs," manifest necessity is apparent. *Bates,* 917 F.2d at 395. If such an error exists, double jeopardy will not attach to a declaration of mistrial. It is highly unlikely that the error in this case would have resulted in a reversal of Weston's conviction. The State agrees and does not argue for a finding of manifest necessity on this ground.

▮▮▮ Second, if it is uncertain that reversal would have resulted, four factors should be considered in determining whether the

---

**3.** The level of deference to be afforded a trial court's decision to declare a mistrial varies with the circumstances of each case. We accord a trial court's decision to declare a mistrial on the basis of juror bias "the highest degree of respect" and deference. *Arizona v. Washington,* 434 U.S. at 510, 98 S.Ct. at 832–33. However, *Washington* cautions that reviewing courts have the obligation to ensure that a trial court exercised "sound discretion" in declaring a mistrial. *Id.* at

511, 98 S.Ct. at 833. The trial judge "must always temper the decision whether or not to abort the trial by considering the importance to the defendant of being able, once and for all, to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate." *Id.* (quoting *United States v. Jorn,* 400 U.S. 470, 486, 91 S.Ct. 547, 558, 27 L.Ed.2d 543 (1971)).

state trial court properly exercised its discretion. These factors are (1) whether the state trial court heard the position of the parties with regard to a mistrial; (2) whether it considered alternatives to granting a mistrial; (3) whether it acted deliberately and not abruptly; and (4) whether it determined the defendant would benefit from a mistrial. *Bates,* 917 F.2d at 395–96.

The first and third of these factors may be considered together in this case. The state trial court heard argument from both parties concerning the propriety of a mistrial and deliberated over the issue overnight. The next day the judge again heard argument from the parties and considered Weston's written motion before declaring the mistrial. The record demonstrates that the state trial judge acted deliberately in determining that a mistrial was required. However, the judge acted abruptly by cutting off Adachi's objections and refusing to allow him to confer with Weston before he discharged the jury.

 The state trial court did not properly consider alternatives to a mistrial and did not determine that the mistrial would be in the defendant's best interests. When the improper questioning occurred, the state trial court immediately struck the offending testimony from the record and admonished the jury to disregard it. The court gave little thought to the beneficial impact of this action on the jury or to the curative value of limiting instructions on any prejudice resulting from the improper testimony. Weston requested this exact form of relief in the event that the state trial court declined to grant a mistrial with prejudice. The error in this case was such that curative instructions may well have eradicated any juror prejudice. We conclude that the state trial court did not adequately consider these alternatives.

 The state trial judge also did not properly consider whether the mistrial would benefit Weston. In ruling that the statements were prejudicial, the state trial court did not consider whether the prejudicial impact of the statements would be outweighed by the harm caused to Weston by allowing the prosecution a second trial opportunity. Weston contends that the first trial was going very well for him at the time the mistrial

was declared. He also contends that the state improved its case in the second trial by finding new evidence, by finding a new witness and by calling an important defense witness as its own.

Weighing these four factors in light of the error that occurred in this case, we conclude that manifest necessity did not exist and declaration of the mistrial over Weston's objection and without his consent was unwarranted.

## V

We conclude that Weston's second trial was barred by the Double Jeopardy Clause of the Fifth Amendment. Questions presented concerning Weston's second trial are moot.

AFFIRMED.

WALLACE, Chief Judge, dissenting:

My colleagues conclude that Weston did not consent to the mistrial declared in his first trial, and that the mistrial was not declared for manifest necessity. On the contrary, the record shows that Weston consented to the first mistrial without prejudice. Even if that were not so, the state judge properly exercised his discretion and declared the mistrial on the grounds of manifest necessity. Furthermore, because any improper comments made by the state judge in the second trial were not unduly prejudicial, I would reverse the district court's issuance of the writ.

## I

The circumstances surrounding a mistrial will dictate whether the Double Jeopardy Clause bars retrial. If Weston consented to the mistrial, retrial is allowed. *United States v. Bates,* 917 F.2d 388, 392 (9th Cir. 1991) (*Bates*). If Weston did not consent, retrial will be permitted only if justified by "manifest necessity." *Id.* However, even if the mistrial was declared at Weston's request, the Double Jeopardy Clause will still bar retrial if he "can show that the 'conduct giving rise to the successful motion for mistrial was intended to provoke [him] into mov-

ing for a mistrial.'" *United States v. Lun,* 944 F.2d 642, 644 (9th Cir.1991) (*Lun* ), *quoting Oregon v. Kennedy,* 456 U.S. 667, 679, 102 S.Ct. 2083, 2091, 72 L.Ed.2d 416 (1982).

The majority considers Weston's consent to a mistrial without prejudice as ambiguous, and states that the district court "wholly failed to determine whether the later written motion superseded and effectively revoked the earlier request." Maj. op. at 637. The record does not support this analysis. Weston argues that he did not consent to the mistrial in this case unless it was to be with prejudice. But a fair reading of the entire record, in context, supports a finding that Weston did consent.

The first mention of any motion for mistrial comes where Weston's attorney, Mr. Adachi, states:

> I have a motion for a mistrial, your honor. As the court just heard the prosecutor elicited certain information . . . [that] was totally extraneous to the case here . . . and I assume [the prosecutor] had knowledge of what his witness was going to say before he put him up on this.

The charge here was that the prosecutor intentionally "goaded" Weston's attorney into asking for a mistrial. A mistrial on those grounds, under *Kennedy* and *Lun,* would bar retrial. So at this point, what the defense was asking for was a mistrial with prejudice.

But the state judge quickly responded to that view of events by stating: "[The prosecutor] doesn't do that sort of thing." Weston's attorney then replied, "I am not accusing [the prosecutor]" and went on to say:

> *[A]nyway in addition* it was, I think *also* extraneous and unnecessar[ily] cumulative as well as prejudicial to have the parole officer come up here. Now the jury not only knows that when he is arrested he is involved in check fraud, but [that] he is on parole.

(Emphasis added.)

This was, in effect, a second basis for a mistrial, based on prejudice. Weston's attorney then changes the direction of the conversation, stating that "my position is that the court . . . declare a mistrial," at which time the judge specifically told him that the court would not declare a mistrial unless it was on motion by the defense, otherwise "you've got double jeopardy." After the discussion of the consequences of double jeopardy, the state judge said "anyway, you made a motion for a mistrial, am I correct?" Weston's attorney replied "yes."

At this point, Weston has moved for a mistrial on two grounds: goading by the prosecutor (which the state judge indicated will be unsuccessful), and on the basis of prejudice. At the end of the discussion, the state judge made sure that Weston's attorney had made the motion. Certainly Weston knew from this discussion that the state judge would not grant the mistrial on his own motion.

Thus, before the recess, the state judge had clarified that the only issue he was considering was Weston's motion for a mistrial based upon prejudice. This is what he took under advisement for decision the next day.

The following day, Weston's counsel submitted a new written motion for mistrial on the grounds that the prosecution intentionally goaded the defense into making the mistrial motion. That motion asked for a mistrial with prejudice. The majority somehow takes this written motion as a withdrawal of the first motion, stating that the trial judge "wholly failed" to determine if this later motion revoked the earlier request. But the trial judge is not Weston's lawyer. His lawyer had adequate time to withdraw his prior motion. He did not do so in writing or orally. Indeed, the record shows he did not intend to withdraw it.

What the majority fails to point out is that after this written motion was submitted, the court heard further argument before ruling on the mistrial. Here is what the transcript shows:

> Court: I have before me a motion for mistrial along with a memorandum filed this morning. . . . Any further argument in this matter *other than what I have already heard?*

> . . . . .

> Mr. Cling (Prosecutor): Your honor, the allegations that I intentionally attempted to circumvent the court's ruling I really

think are preposterous.... I am perfectly aware of your honor's reaction to Attorneys who attempt to do something that has been ruled inadmissible.

. . . . .

Mr. Adachi (Defense Counsel): Now if Mr. Cling were an inexperienced prosecutor the court could say that perhaps it was negligence or reckless. The statement itself I think speaks for Mr. Cling's intent.

. . . . .

Mr. Cling: Can I just say one more thing?
Court: Sure.
Mr. Adachi: I'm not finished yet.
Mr. Cling: I thought you were.
Mr. Adachi: *Now addressing the issue of prejudice,* I think that any evidence of bad acts is always prejudicial to a defendant. The jury is going to think well he was a bad man on one occasion [so] he is a bad man on this occasion. And I really think that I had a really good shot in the case. And Mr. Cling *by his question and by his answer robbed me of my chances in this case.*

. . . . .

Court: All Right. First of all I am going to make an expressed finding so the record is crystal clear there was *no attempt to goad.*

. . . . .

Court: Secondly ... I do think that [the testimony] creates prejudice against the defendant.... This cumulative error so to speak is enough for me to grant the motion. The motion for mistrial will be granted.

(Emphasis added.)

This discussion shows a number of things. It shows that the judge was aware of the written motion and memorandum submitted that morning by the defense. It also makes it clear that the state judge had in mind and would consider the arguments made the day before which focused on Weston's motion for a mistrial based upon prejudice. It further demonstrates that after the defense submitted the written motion, Adachi continued to argue to the court that the testimony was prejudicial, and that it robbed the defense of the chance for a fair trial. Of course, a mistrial granted on those grounds is without prejudice. It is clear that not only was the previous motion for a mistrial without prejudice not withdrawn by filing the written motion, but it was being pressed anew when Adachi again argued that the testimony was unfairly prejudicial. The judge found no prosecutorial goading, and this finding was not clearly erroneous. *Lun,* 944 F.2d at 644. The court then disposed of the motion for mistrial based on prosecutorial misconduct made the day before and argued for by Adachi on the second day. The judge held that the testimony about Weston's parole and prior arrest "creates prejudice against the defendant" and granted Weston's motion for a mistrial on this ground.

All this seems clear from the record. If there was any ambiguity, it occurred after the court granted the motion for a mistrial. It was only then that Adachi stated: "Judge, I wanted to talk to my client before the court [ruled]." Clearly, the judge was not under any obligation at that point to allow Adachi to withdraw his motion or to withdraw his ruling. The majority correctly points out that one of the purposes of the Double Jeopardy Clause is to allow the defendant to keep control of his fate. But that does not mean that once a judge has held a hearing over two days regarding the prejudicial nature of the testimony, he is further obligated, after making his ruling, to allow the defense to withdraw its motion. There is no rule of law that requires a judge to allow a defendant to withdraw a motion for a mistrial once it has been granted.

Adachi's statement that the prosecution had "robbed" him of his chance to win the case simply underscores the extent to which the defense was arguing prejudice. So does his statement that the testimony was "devastating." For the defense to come before us now and argue that Adachi might have gone to the jury with the first case is disingenuous in light of the assertion that the prejudicial conduct of the prosecutor was "devastating" and "robbed him" of his chances to win the case.

My reading of the entire record on this issue convinces me that Adachi made a motion for a mistrial based on two separate grounds, prosecutorial goading and prejudice, and that the judge granted the motion on the second ground. Because the motion was made by Weston, there was consent.

## II

Since Weston consented to the mistrial, I would not get to the issue of whether the mistrial was justified by manifest necessity. Nevertheless, I believe the majority's analysis of this issue is also wanting.

The "degree of deference to be accorded the trial judge's determination of manifest necessity varies with the circumstances of each case." *United States v. Jarvis,* 792 F.2d 767, 769 (9th Cir.) (*Jarvis* ), *cert. denied,* 479 U.S. 852, 107 S.Ct. 182, 93 L.Ed.2d 116 (1986). Both the Supreme Court and this court have expressly held that we must "accord the highest degree of respect to the trial judge's evaluation of the likelihood that the impartiality of one or more jurors may have been affected by the improper comment." *Arizona v. Washington,* 434 U.S. 497, 511, 98 S.Ct. 824, 833, 54 L.Ed.2d 717 (1978) (*Washington* ); *Jarvis,* 792 F.2d at 769. Indeed, we may reverse the declaration of a mistrial on those grounds only if the trial judge's decision was "irrational or irresponsible." *Washington,* 434 U.S. at 514, 98 S.Ct. at 834–35; *Jarvis,* 792 F.2d at 769, 770.

It is eminently sensible for us to accord great deference to the trial court's evaluation of the likelihood that an impermissible statement would affect the outcome of the trial. The trial judge is the expert when it comes to determining how a jury will react to potentially prejudicial statements. Moreover, because he has observed the entire trial, he is in a unique position to ascertain accurately whether the statement would affect the jury's decision. Reviewing only portions of a cold record, divorced entirely from the context of the proceeding, we stand in a remarkably poor position to determine whether an improper comment may affect the jury's decision. As the Supreme Court has explained, "[t]here are compelling institutional considerations militating in favor of appellate defer-ence to the trial judge's evaluation of the significance of possible juror bias." *Washington,* 434 U.S. at 513, 98 S.Ct. at 834. It is therefore doubly perplexing that the majority insists on not following the clearly established precedent of this court and of the Supreme Court which requires us "to accord the highest degree or respect" to the trial court's decision in this case.

Finally, the majority ignores the perverse incentives its decision creates. The trial court is vested with the primary duty to protect the integrity of the trial and to ensure that the defendant gets a fair trial. While curative instructions and other sanctions often suffice to remedy prejudicial statements and testimony, "[u]nless unscrupulous defense counsel are to be allowed an unfair advantage, the trial judge must have the power to declare a mistrial in appropriate cases." *Id.* By failing to accord deference to the trial judge's evaluation of the likelihood that the juror may have been prejudiced by the improper testimony, the majority's opinion will unduly chill trial courts from exercising their discretion to declare mistrials when necessary. As the Supreme Court has explained, "[t]he adoption of a stringent standard of appellate review in this area" will deter trial courts from exercising their discretion to declare mistrials "by a concern that any time a reviewing court disagreed with its assessment of the trial situation a retrial would automatically be barred." *Id.*

The majority correctly points out that because the error that arose in the first trial was not of the sort that would clearly require reversal, we may include in our analysis whether the judge: (a) heard the opinions of the parties regarding the propriety of a mistrial, (b) considered alternatives and chose the one least harmful to the defendant, (c) acted with deliberation and not abruptly, and (d) determined the defendant would benefit from the mistrial. *Bates,* 917 F.2d at 395–96.

As the majority concedes, the trial judge did hear from all of the parties on the mistrial motion (in fact, there were hearings over two days), and did act with deliberation (the judge took the motion under submission the

first day and heard additional argument the next day).

The majority concludes, however, that the judge did "not properly consider alternatives to a mistrial and did not determine that the mistrial would be in the defendant's best interests." Maj. op. at 638. But the record shows that the judge did consider the alternative of giving a curative instruction, and decided that such an instruction would be insufficient. The judge explained to the jury: "The reason I granted [the mistrial] was [that] two things came into evidence that you shouldn't hear *and I think it is very hard to strike.* ... I can tell you to forget about it *but that is hard to do,* forget about it. And that is the reason I granted a mistrial in the matter." (Emphasis added.)

The record also shows that the judge did consider the impact of the mistrial on Weston. The judge stated: "[Weston] is not getting a fair trial under [the] circumstances because [the testimony] is terribly prejudicial."

The trial judge apparently believed that the trial had been a fairly close one and that Adachi had a good chance of obtaining acquittal for Weston before the prosecutor elicited the statement that Weston was arrested for check fraud and that he was on parole. Adachi argued to the trial court that the improper comments were "devastating." As Adachi explained: "The jury now knows that the defendant was arrested for check fraud. I specifically kept Mr. Weston off the stand for the purpose of excluding prior bad acts as I made in my earlier motion in this court in his felony convictions, now they know. They also know that he is a parolee." After pointing out that an "untouchable witness" had directly contradicted the testimony of the victim, and emphasizing that he was "[n]ow addressing the issue of prejudice," Adachi further exclaimed: "I had a really good shot in this case. And [the prosecutor] by his question and by his answer robbed me of my chances in this case."

The trial court agreed that Weston had been unduly prejudiced, and his conclusion was certainly reasonable. In what may have been a very close case, the jury was exposed to the prejudicial knowledge that the defendant had committed prior crimes and bad acts. Moreover, the defendant had forfeited his right to testify on his own behalf for the purpose of keeping this information from the jury. Thus, not only was Weston prejudiced by the jury's knowledge of his past crimes and bad acts, but he was also effectively deprived of his right to testify, a right he apparently would have wanted to exercise but for his desire to keep his prior crimes and bad acts from the jury's knowledge.

In a case like this where we review "the trial judge's evaluation of the likelihood that the impartiality of one or more jurors may have been affected by the improper comment," we are required to give the judge the "highest degree of respect." *Jarvis,* 792 F.2d at 769. Because the trial court's decision to declare a mistrial was not "irrational and irresponsible," *id.* at 769, 770, but rather a thoughtful and considered exercise of his discretion in an attempt to secure for the defendant a fair trial, I must disagree with the majority's conclusion that the Double Jeopardy Clause precluded Weston's retrial.

## III

Because of how I see the case, I must get to a third issue: whether the judge's comments at the second trial rose to such a level that they deprived Weston of a fair trial. Because the scope of our review on habeas is very narrow, we must determine if the conduct rose to a level that predisposed the jury to find the defendant guilty. *See Donnelly v. DeChristoforo,* 416 U.S. 637, 642–43, 94 S.Ct. 1868, 1871–72, 40 L.Ed.2d 431 (1974); *United States v. Bermea,* 30 F.3d 1539, 1569 (5th Cir.1994). The judge made comments to Weston's lawyer that I believe should not have been made. However, the judge gave a curative instruction telling the jury not to be influenced by the comments from the bench. This is usually sufficient to dispose of the perceived unfairness. *See United States v. Schoor,* 597 F.2d 1303, 1308 (9th Cir.1979) ("any prejudice flowing [from court's comments] was cured by the court's timely and several cautionary instructions"). In addition, many of the comments that Weston points to were not even made in the presence of the jury. Furthermore, the jury did not convict Weston on every charge, indicating that it took seriously his counsel's arguments. I would therefore reverse the dis-

trict court's issuance of the writ on this ground as well.

## IV

For the above reasons, I conclude that Weston consented to a mistrial without prejudice and, in any event, that manifest necessity has been shown. I also conclude that the trial judge's comments at the second trial did not deprive Weston of a fair trial. Because I would reverse the district court's issuance of the writ of habeas corpus on each ground relied upon by the district court, I respectfully dissent.