81 F.3d 169
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Carlos RODRIGUEZ, Plaintiff-Appellant,
v.
Larry KINCHELOE, Superintendent of the Spring Creek
Correctional Center, Defendant-Appellee.
 No. 95-35164.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 7, 1995.
Decided March 28, 1996.
 
 1
 Before: D.W. NELSON and NOONAN, Circuit Judges, and TANNER,* District Judge.
 
 
 2
 MEMORANDUM**
 
 BACKGROUND
 
 3
 In 1983, Carlos Rodriguez was tried before a jury on numerous counts of sexual misconduct involving several juvenile males. S.W., in prison at the time on unrelated matters, testified against Rodriguez, alleging three acts of sexual misconduct by Rodriguez. Rodriguez was ultimately convicted of 25 counts of sexual misconduct. Rodriguez filed an application for post-conviction relief in the state court alleging that the state failed to disclose an alleged sentence modification agreement between the State and S.W. The trial court denied the application based on the testimony of the prosecutor and S.W. that there had been no agreement.
 
 
 4
 The Alaska Court of Appeals affirmed the denial of post-conviction relief. Rodriguez filed a petition for writ of habeas corpus claiming that the state's failure to disclose the alleged agreement violated his right to due process under the Fourteenth Amendment. The magistrate judge found that the state court's factual finding that there had been no agreement with S.W. was entitled to a presumption of correctness under 28 U.S.C. § 2254(d) and recommended that the petition be denied. The district court adopted the magistrate judge's recommendation and denied the petition. Rodriguez timely appealed. Jurisdiction is pursuant to 28 U.S.C. § 2253, and we AFFIRM.[1]
 
 STANDARD OF REVIEW
 
 5
 A district court's decision to grant or deny a petition for habeas relief is reviewed de novo. Weston v. Kernan, 50 F.3d 633, 636 (9th Cir.1995). The trial court's findings of fact are presumptively correct and are reviewed under the clearly erroneous standard. Id., citing Thomas v. Brewer, 923 F.2d 1361, 1364 (9th Cir.1991).
 
 DISCUSSION
 
 6
 Rodriguez argues that the State of Alaska made a promise of leniency to S.W. in return for his testimony against Rodriguez, and that the prosecutor's failure to disclose the agreement critically impacted the fundamental fairness of Rodriguez' trial on the counts involving S.W. The state court concluded that Alaska never tendered a promise of leniency to S.W.
 
 
 7
 Due process requires the government to disclose material, exculpatory information in its possession to the defense. Brady v. Maryland, 373 U.S. 83, 87 (1963). Brady information also includes material that bears on the credibility of witnesses. Giglio v. United States, 405 U.S. 150, 154 (1972). Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the outcome of the trial would have been different. Hendricks v. Zenon, 993 F.2d 64, 673 (9th Cir.1993), quoting United States v. Bagley, 473 U.S. 667, 682 (1985).
 
 
 8
 Federal courts in habeas proceedings must accord the state court's factual findings a presumption of correctness under 28 U.S.C. § 2254(d), unless due process is lacking, or the state court's factual findings lack fair support in the record. Sumner v. Mata, 455 U.S. 591, 592 (1982) (per curiam); Marshall v. Lonberger, 459 U.S. 422, 432 (1983); Bashor v. Risley, 730 F.2d 1228, 1233 (9th Cir.1984). There are two alleged agreements at issue here, and we address each separately.
 
 First Promise--the Transfer Agreement
 
 9
 During direct examination of S.W., prosecutor Olson asked S.W. whether anyone had made any promises to him that he would receive a lighter sentence in return for his testimony against Rodriguez, to which S.W. responded, "No." [Tr. 54]. During closing argument, Olson stated that S.W. "had nothing to gain, no deals could be made with [S.W. for his testimony]." [Tr. 2007]. To support his position that an agreement existed, Rodriguez points to a file memo in which Assistant DA Helene M. Antel wrote: "Frank and I "promised" Shawn just prior to grand jury that we would try to do something/anything about his jail situation (basically to soothe him into a state of cooperation quite frankly)."[2]
 
 
 10
 Defendant also points to Antel's testimony at a post-conviction relief hearing before Superior Court Judge Johnstone in 1990 to support his contention that her promise was a quid pro quo for S.W. agreeing to testify against Rodriguez. Antel testified that she would try and do something about S.W.'s "jail situation" (that is, that she would do what she could to see that he was not harmed in retaliation for his testimony against Rodriguez), but she did not promise to help S.W. in return for his testimony. On direct examination, Antel stated:
 
 
 11
 I certainly made a promise to Shawn to try and do something. And I certainly made that promise in the hopes that when I delivered, he would be convinced to cooperate with the state and testify before the grand jury as he had--consistent with what he had told me. [ER 71]. On cross-examination Antel stated: I never actually promised [S.W.] anything in exchange for anything else ... I gave him my personal commitment that I would try very hard to see to it that the concerns he had about where he was located in terms of that jail could be remedied. [ER 83].
 
 
 12
 Thus, it is clear that Antel did not promise S.W. anything in return for his grand jury testimony.
 
 Second Promise--Modification Agreement
 
 13
 Rodriguez argues that prosecutors made an agreement with S.W. to non-oppose S.W.'s motion to modify in return for S.W.'s testimony against Rodriguez.
 
 
 14
 The state court found testimony from S.W. and prosecutor Paul Olson that no agreement existed more persuasive and reliable than conflicting testimony from defense attorneys Susan Orlansky and Rich Zahniser. Olson testified that there was no agreement with Zahniser or Orlansky, and that he did not recall discussions with Zahniser regarding the motion to modify. He acknowledged that he spoke with Orlansky prior to trial regarding a motion to modify S.W.'s sentence, and that Orlansky had asked him what his position would be regarding S.W. serving some of his remaining time concurrently. Olson also testified that he told Orlansky that while he would not agree to non-oppose such a motion as a condition of S.W.'s testimony, he would speak with Bob Bundy to express his "personal feeling" on the concurrent time issue.
 
 
 15
 S.W.'s testimony corroborates Olson's. S.W. testified that no promises had been made to him in return for his testimony, and that he knew of no agreements for the state to non-oppose a motion to modify his sentence. Id. S.W. also testified that he told Orlansky he did not want any "deals", and that he wanted to testify against Rodriguez for "personal reasons" because of what Rodriguez had done to him. He testified that Olson told him he couldn't make any deals with S.W.
 
 
 16
 On the other hand, the most compelling evidence of an agreement is a memorandum from Zahniser directed to Orlansky and placed in S.W.'s case file, in which Zahniser wrote:
 
 
 17
 "I confirmed with Paul (Olson) the understanding that upon the successful testimony of [S.W.] that the state would non-op a motion to modify his sentence by giving him dual credit for his pre-sentence incarceration." [Excerpts of Record at 2].
 
 
 18
 In ruling on Rodriguez' petition for post-conviction relief, the state court held that Rodriguez failed to prove the existence of an agreement by a preponderance of the evidence. Specifically, the court found the testimony of Orlansky and Zahniser to be inconsistent in several respects, and the testimony of both to be confusing on cross-examination.[3] The court also found that S.W. did not know of any agreements, and he did not commit perjury in this regard. Also, the court found that S.W. had ample reason to testify against Rodriguez, even in the absence of any agreements.
 
 
 19
 When two contrary conclusions find fair support in the record, the presumption of correctness under § 2254(d) requires that the federal court defer to the state court's findings. Wainwright v. Goode, 464 U.S. 78, 85 (1983) (per curiam). The state court's factual finding that there was no agreement between the state and S.W. is fairly supported by the record. Since evidence exists which both supports and detracts from Rodriguez' claim that an agreement existed, this court must accord the state court's findings of fact the presumption of correctness.
 
 
 20
 Finally, Rodriguez argues that he was prejudiced by the failure to disclose the alleged agreement because disclosing the agreement would have impeached S.W.'s testimony and established his bias against Rodriguez. We find that there was no agreement. However, even if an agreement existed between the prosecutor and S.W., or the prosecutor and S.W.'s attorneys, Rodriguez was not prejudiced because there was no reasonable probability that the outcome of the trial would have been different had the alleged agreement been disclosed. See Hendricks v. Zenon, 993 F.2d at 673. The evidence against Rodriguez was overwhelming, and considering the hostility S.W. exhausted toward Rodriguez at trial, it is unlikely that S.W.'s credibility would have been any more affected by the disclosure of an agreement which reduced S.W.'s sentence by a few months. Accordingly, the district court judgment is AFFIRMED.
 
 NOONAN, Circuit Judge, concurring:
 
 21
 The contemporary documents showing that an "understanding" with the prosecutor had been reached subvert the state court's findings on that question. I concur in the result on the ground that I do not believe disclosure to the jury of an agreement with the prosecutor would have affected the result.
 
 
 
 *
 The Honorable Jack E. Tanner, Senior United States District Judge for the Western District of Washington, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Frank Prewitt is reflected as the Respondent in the Notice of Appeal. On February 1, 1996, this Court granted Plaintiff's Motion to Amend Petition for Writ of Habeas Corpus, to name the warden of the facility having custody and control over the Plaintiff/Appellant
 
 
 [2]
 Helene Antel is the prosecutor who presented Mr. Rodriguez' case to the grand jury. "Frank" refers to Frank Feichtinger, the state's investigator in the case
 
 
 [3]
 See transcripts of testimony of Susan Orlansky, ER 109, and Rich Zahniser