NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

NOV 6 2023

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

KENNETH RUFUS CROWE,

Defendant-Appellant.

No.   22-10139

D.C. No.
1:18-cr-00010-FMTG-3

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Guam
Frances Tydingco-Gatewood, Chief District Judge, Presiding

Argued and Submitted October 5, 2023
Honolulu, Hawaii

Before:  BERZON, MILLER, and VANDYKE, Circuit Judges.
Dissent by Judge VANDYKE.

Kenneth Rufus Crowe appeals from the district court's denial of his motion

to dismiss his indictment on double jeopardy grounds. After the jury was

empaneled, Crowe requested a one- or two-day continuance in response to a report

about alleged jury bias against his lawyer. The district court instead ordered that

Crowe be tried separately from his codefendants, citing Federal Rule of Criminal

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

Procedure 14. We have jurisdiction under 28 U.S.C. § 1291. *See Abney v. United States*, 431 U.S. 651, 662 (1977). We reverse.

We review de novo the district court's denial of a motion to dismiss the indictment on double jeopardy grounds. *See United States v. Bates*, 917 F.2d 388, 392 (9th Cir. 1990). "A judicial determination of manifest necessity is reviewed for abuse of discretion, but the level of deference varies according to the circumstances in each case." *United States v. Chapman*, 524 F.3d 1073, 1082 (9th Cir. 2008).

The Double Jeopardy Clause provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. When a "case is dismissed after jeopardy attaches but before the jury reaches a verdict," and a mistrial is announced, a defendant may be retried only if he "consent[ed] to the dismissal" or if the dismissal was "required by 'manifest necessity.'" *United States v. Bonas*, 344 F.3d 945, 948 (9th Cir. 2003). The government argues both that Crowe consented to the mistrial and that the mistrial was a manifest necessity. Although the government raises those arguments for the first time on appeal, we assume without deciding that it has not forfeited them.

1. The record does not support the government's argument that Crowe consented to a mistrial. "[C]onsent to a mistrial may be inferred 'only where the circumstances positively indicate a defendant's willingness to acquiesce in the

mistrial order.'" *Weston v. Kernan*, 50 F.3d 633, 637 (9th Cir. 1995) (quoting *Glover v. McMackin*, 950 F.2d 1236, 1240 (6th Cir. 1991)). In determining whether counsel consented to a mistrial, we consider the full circumstances of counsel's actions, including whether a later action "superseded and effectively revoked [an] earlier request." *Id.* at 637–38.

After requesting a continuance, Crowe's counsel stated that if the district court adopted "the government's position that Mr. Crowe has to agree [to] go [to] trial right now" without a continuance, then "a mistrial for the entire case should be declared by the Court." Even assuming that counsel's statement constituted initial acquiescence to a mistrial, the analysis does not stop there. The circumstances establish consent only when counsel both "affirmatively indicate[s] his understanding that there could and would be a retrial" *and* does "not object to the order of mistrial." *United States v. Smith*, 621 F.2d 350, 352 (9th Cir. 1980).

In response to the district court's mention of a potential severance, Crowe's counsel interjected several times to clarify that Crowe did not want to be tried outside of the then-current proceeding: "Well, my client does not want to be severed . . . . He does not want to be severed." Regardless of what counsel meant in the earlier exchange, his later, unequivocal statements opposing severance revoked any previous consent. *See Weston*, 50 F.3d at 637 ("[C]ounsel's

3

immediate and repeated objections demonstrate that [the defendant] did not consent to the mistrial.").

To be sure, Crowe's later statements opposing severance did not specifically mention his earlier request for a mistrial as an alternative to a continuance. But the relevant inquiry is whether the defendant consented to "the [type of] mistrial that was in fact declared by the . . . trial judge." *Weston*, 50 F.3d at 637 n.2. In this case, severance was the vehicle through which the trial judge declared a mistrial. Regardless of whether Crowe might have consented to a mistrial in the context of a continuance, his statements opposing severance were sufficient to make clear that he did not consent to the mistrial that the district court ordered.

2. The record also does not show that a mistrial was a manifest necessity. Although we review determinations of manifest necessity for abuse of discretion, the district court made no such determination here. To the contrary, the district court stated that it was "not required to analyze severance under the 'manifest necessity' test." When the district court "evinc[es] a concern for the possible double jeopardy consequences of an erroneous ruling," deference may be appropriate despite its "fail[ure] to find 'manifest necessity' in those words." *Arizona v. Washington*, 434 U.S. 497, 515–17 (1978). But here, unlike in *Washington*, the district court expressly disavowed any consideration of double jeopardy implications. In any event, a finding of manifest necessity here would

4

warrant "the strictest scrutiny," *id.* at 508, given evidence that the government caused the mistrial by erroneously advising the court that it had "absolute authority under Rule 14 to sever" Crowe without declaring a mistrial.

Manifest necessity exists only in "'very plain and obvious causes,'" and the government bears a "heavy burden" in establishing it. *Gouveia v. Espinda*, 926 F.3d 1102, 1111, 1114 (9th Cir. 2019) (quoting *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 580 (1824)). The government has not met that burden in this case. Far from preventing prejudice to Crowe, the mistrial caused it. A continuance would have preserved Crowe's "right to have the jury first empaneled to try [him] reach a verdict," *Bates*, 917 F.2d at 392, and allowed him to retain his counsel, who resigned as a result of the severance. A mistrial was also unnecessary to avoid prejudicing the other defendants, who not only did not object to a continuance, but even *requested* that Crowe receive a continuance instead of a severance. The government argued that a continuance would have prevented one of its witnesses from testifying, but the record shows that a one- or two-day continuance would not have had a material effect. And while it may be fair to say that Crowe's counsel had previously engaged in disruptive tactics apparently aimed at delaying the proceedings, manifest necessity requires "plain and obvious" evidence, not speculation by a district court—let alone an appellate court—as to a litigant's motives. *Gouveia*, 926 F.3d at 1114 (quoting *Perez*, 22 U.S. (9 Wheat.) at 580).

The record does not show that the government has met its heavy burden of establishing manifest necessity in this case.

**REVERSED and REMANDED for dismissal of the indictment with prejudice.**

*United States v. Crowe*, No. 22-10139
VANDYKE, Circuit Judge, dissenting:

Crowe operated a helicopter leasing business with over $300 million in revenues and is alleged to have caused numerous deaths and serious injuries as a result of his company's intentionally fraudulent and illegal practices. After Crowe was indicted on more than 100 charges, his counsel aggressively acted to disrupt and delay his impending trial. By the time the jury had been empaneled and the district court was forced to address the continuance request now at issue in this appeal, Crowe's counsel had already repeatedly delayed the proceedings using a variety of tactics that the district court, which was remarkably patient, legitimately suspected were simply chicanery. In rejecting Crowe's attempt to *again* delay his trial, the court made the legal mistake of thinking that double jeopardy principles don't apply to the mere severance of one defendant from a trial. That was error, but not unfixable error in my view. On remand, I believe the district court could conclude on this record that Crowe consented to a mistrial. And even if Crowe didn't consent, I believe that, properly taking account of Crowe's counsel's prior attempts at delay and disruption (which the majority here makes little attempt to do), the district court could conclude that a mistrial was supported by manifest necessity. I therefore respectfully dissent from the majority's conclusions otherwise.

There is significant evidence in the record that Crowe through his counsel consented to a mistrial, and his later statements that he did not want to be tried

separately from his co-defendants did not necessarily revoke his earlier consent to being tried before a different jury. And while the district court admittedly did not purport to conduct a "manifest necessity analysis," it did develop an extensive record, devoting significant effort to an analysis that was not all that different. As the district court is best positioned to review the record—having experienced the disruptive delay tactics employed by Crowe's counsel—I believe it should undertake the double jeopardy analysis in the first instance and determine whether there was either consent to or manifest necessity for a mistrial.

Once a jury has been empaneled and sworn in, "the defendant has a right to have his case presented to that jury." *United States v. Gaytan*, 115 F.3d 737, 742 (9th Cir. 1997). In certain circumstances, this right must be "subordinated to the public interest in affording the prosecutor one full and fair opportunity to present his evidence to an impartial jury." *Id.* (cleaned up) (quoting *Arizona v. Washington*, 434 U.S. 497, 505 (1978)). In the case of a mistrial, "retrial will be permitted only if the defendant consented to the mistrial or if the mistrial was justified by manifest necessity." *Id.* In this case, there is evidence in the record supporting that a retrial would be permissible on either basis.

Before the events that led to the district court severing Crowe's trial from his co-defendants, Crowe's counsel, David Lujan, had already repeatedly delayed the start of Crowe's trial. First, Lujan unsuccessfully moved to disqualify the

2

prosecution on what appear to be frivolous or near-frivolous grounds. Then, on two other instances he simply did not show up in court, purportedly because he may have been infected with COVID (he had not). After imposing these delays, Lujan again attempted to delay the trial on the morning it was supposed to begin by expressing concern about an ethical dilemma and claiming that he needed a continuance to resolve it. He expressly requested a mistrial if the continuance was not granted, stating "if that's the government's position that Mr. Crowe has to agree [to] go [to] trial right now and forego his ethical [dilemma] … a mistrial for the entire case should be declared by the Court …." Lujan also stated that without a continuance he would be forced to resign as Crowe's attorney, which of course also would have necessitated a mistrial.

1.      Even assuming the Government forfeited its consent and manifest necessity arguments by not presenting them to the district court, I would forgive that forfeiture to avoid a miscarriage of justice. It is true that "we generally will not consider arguments raised for the first time on appeal, although we have discretion to do so." *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1213 (9th Cir. 2020) (quoting *In re Am. Airlines, Inc.*, 217 F.3d 1161, 1165 (9th Cir. 2000)). One circumstance warranting departure from the general rule of forfeiture is when "review is necessary to prevent a miscarriage of justice." *Bolker v. C.I.R.*, 760 F.2d 1039, 1042 (9th Cir. 1985); *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999)

3

(holding that forfeiture will be forgiven "when necessary to avoid manifest injustice"). As noted, the allegations in this case involve the death or serious injury of multiple people and Crowe's attorney repeatedly abusing procedural devices to delay and disrupt the trial at the expense of the Government. Given this, I would exercise our discretion and excuse any forfeiture. Doing otherwise rewards improper gamesmanship in a case involving alleged fraud and illegal activity with deadly consequences.

2.     There is evidence in the record sufficient to find that Crowe consented to a mistrial and never withdrew that consent. Consent to a mistrial can be made either expressly or impliedly, *see United States v. Smith*, 621 F.2d 350, 351 (9th Cir. 1980), and here Lujan provided consent expressly. Lujan requested a one- or two-day continuance, but if that request was not granted, he expressly insisted "that a mistrial for the entire case should be declared by the Court."[1]

It is unclear whether Lujan's request for a mistrial for the "entire case" meant he was attempting to condition his consent on a mistrial being declared for all of the defendants, as opposed to just him. At one point during the colloquy, Lujan stated that "if the other defendants want to go forward, that's their business," which

---

[1] For this reason, the majority's reliance on the standard governing *implied* consent to a mistrial is misplaced. Unlike a situation where a court is attempting to divine whether a defendant has impliedly agreed to a mistrial—and thus must ensure the defendant understands there "would be a retrial," *Smith*, 621 F.2d at 352—here Lujan *expressly* asked "that a mistrial for the entire case should be declared."

4

indicates that he was not attempting to condition his consent on a mistrial being declared for all defendants. But even assuming Lujan intended to condition his consent in that manner, that shouldn't matter because a criminal defendant's double jeopardy right is a right for *that* defendant to be tried by the same empaneled jury, not a right to be tried with (or without) certain co-defendants. Lujan could not properly attempt to condition his consent to a mistrial on the court also declaring a mistrial for his co-defendants, so any such condition should be ignored. *Cf. United States v. Newton*, 327 F.3d 17, 22–25 (1st Cir. 2003).

*Weston v. Kernan*, 50 F.3d 633 (9th Cir. 1995), cited by the majority, is not to the contrary. The critical question in *Weston* was whether a defendant's express consent to a mistrial *with prejudice* also means that defendant consented to a mistrial *without prejudice*. The answer to that question is understandably "no." *Id.* at 637–38. A defendant consenting to the case against him going away for good is not the same thing as consenting to a retrial. But it is a very different question whether a defendant may condition his consent to a mistrial without prejudice on a mistrial also being declared for other defendants. As explained, while a defendant clearly may waive (or not) his own double jeopardy right, he just as clearly *cannot* assert his co-defendant's double jeopardy rights. So even assuming Crowe meant to consent to being tried before a different jury only if he was tried before that new jury alongside

5

his co-defendants, *Weston* would not require the district court to acquiesce to such an inappropriate condition.

The majority points out that a defendant's consent must contain affirmative indications of his or her "understanding that there could and would be a retrial." *Smith*, 621 F.2d at 352. When Lujan stated that if the court refused to grant a continuance he wanted a mistrial, it is clear enough to me that statement was against the background understanding that the mistrial would be followed by a retrial. There was no rational reason for Crowe or his attorney Lujan to think that the court would grant his request for a mistrial without retrying Crowe. This is not a case like *Weston* where the defendant's counsel specifically informed the court that the mistrial he was seeking was *with prejudice*. 50 F.3d at 637–38.

While the majority also points to Lujan's insistence that his client did not desire severance as evidence that Crowe later revoked his consent to a mistrial, this does not follow. Lujan consistently refused to agree to a severance from the start of the hearing, including well before he consented to a mistrial. It was the district court's refusal of a continuance that prompted Lujan to expressly consent to a mistrial. His later reiterations that Crowe did not want to be severed do not convey anything other than that *he still did not want to be severed*. His request for a mistrial

6

as an alternative to a continuance thus remained undisturbed.[2] There is no reason to conclude that Crowe's consent to a mistrial if he was not granted a continuance was ever revoked.

3.    The record also provides evidence that there was manifest necessity for a mistrial. Even though the district court incorrectly believed it did not need to consider manifest necessity, and thus failed to do so, Supreme Court precedent makes clear that "[t]he absence of an explicit finding of 'manifest necessity'" is not dispositive as to whether there was, in fact, manifest necessity. *Arizona v. Washington*, 434 U.S. 497, 516 (1978). On the contrary, when "the record provides sufficient justification for the [lower court] ruling, the failure to explain that ruling more completely does not render it constitutionally defective." *Id.* at 516–17; *see also United States v. Bonas*, 344 F.3d 945, 947 (9th Cir. 2003) ("We consider

---

[2] The majority incorrectly states that, after Lujan consented to a mistrial, he "interjected several times to clarify that Crowe did not want to be tried outside of the then-current proceeding." But that's not true, as the statement quoted immediately thereafter by the majority makes clear. Lujan continued to insist only that Crowe "does not want to be severed." He never said that Crowe objected to being tried in a different proceeding before a different jury. Lujan consistently made clear that Crowe wanted to be tried *with his co-defendants*—i.e., not to be "severed" from being tried *with them*. But Lujan also said he was okay with a mistrial, and never retracted that consent. Lujan may have tried to impliedly condition his consent to a mistrial on the court also declaring a mistrial for Crowe's co-defendants, but as explained, Crowe had no basis to attempt to assert his co-defendants' double-jeopardy rights.

*whether the record supports* the district court's finding of manifest necessity justifying a mistrial." (emphasis added)).

The majority's decision, which makes the district court's decision whether to explicitly undertake a manifest necessity analysis dispositive, is in tension with precedent that makes clear what matters is whether the record "supports" or "provides sufficient justification for" manifest necessity, not whether the district court purported to do a proper manifest necessity analysis. In both *Arizona* and *Bonas*, the correct vehicle for determining whether manifest necessity existed was the existing record, not what the district court labeled its analysis. Here, the district court did apply the wrong legal standard, but the standard it applied was not completely dissimilar to the proper legal standard, and thus the record it developed could support a conclusion of manifest necessity. Put differently, even though the district court applied the wrong legal standard, it may nonetheless have reached the correct conclusion: the appropriateness of severing Crowe from that trial and retrying him later. This is particularly true given Crowe's counsel's disruptive behavior leading up to the district court's decision—behavior that the majority largely ignores but certainly (and appropriately) strongly influenced the district court's decision.

Here, as in *Arizona*, the "basis for the trial judge's mistrial order is adequately disclosed by the record, which includes the extensive argument of counsel." 434

8

U.S. at 517. The district court's decision to sever Crowe for retrial was not a flippant one, nor was it made independent of Lujan's prior conduct in the case. The court, in a lengthy hearing, painstakingly considered whether there were any alternatives to severing Crowe (such as a continuance) and, based on the record in this case—which, again, includes Lujan's prior delays—concluded that there were not. The requested continuance was logistically not an option at this point in the already expensive and delayed trial, which needed to proceed because the prior delays had already imposed large costs and affected witnesses' availability. Because Lujan insisted that he would resign if Crowe's trial proceeded without a continuance, the district court was left with no option but to sever Crowe for retrial later, giving him time to find new representation and resulting in a mistrial. Thus, the existing record in this case contains ample evidence the district court could use to evaluate whether there was manifest necessity for a mistrial. *Contrast Bonas*, 344 F.3d at 949 (concluding there could be no determination of manifest necessity because "the record contains no evidence" that could "support[] the district court's determination of manifest necessity").

The majority nevertheless says Crowe could have been granted a continuance because none of the other defendants objected to it. But this fails to grapple with the practical reality that the district court was facing. It ignores that Lujan had already caused multiple delays. It also ignores the district court's legitimate expectation that

9

Lujan would undoubtedly ultimately insist on a much longer delay than he was ostensibly seeking at that moment, and thus the district court could have reasonably seen this as just another of Lujan's many attempts to avoid moving forward with the case and disrupt the prosecution's ability to coordinate the witnesses it needed to properly prosecute this case. At some point, a district court put in this situation by a disruptive counsel must be able to say, "enough with the delays, we're moving on." The majority's narrow focus on just this one request in isolation disregards the broader context in which the district court was operating. Context matters in manifest necessity determinations. "[T]he key word 'necessary'" "do[es] not describe a standard that can be applied mechanically or without attention to the particular problem confronting the trial judge." *Arizona*, 434 U.S. at 830–31. Ignoring the broader context, appeals courts will always conclude that a requested "short" continuance was reasonable and thus a mistrial was not necessary. But that of course rewards manipulative tactics such as those Crowe's counsel seems to have employed here.

Finally, the majority argues that there is evidence that the Government caused the mistrial by erroneously advising the district court that its authority to sever under Rule 14 would not result in a mistrial, thus warranting the strictest scrutiny under *Arizona*. 434 U.S. at 508. But what caused the mistrial was not the Government's erroneous belief about the effect of Rule 14 severance—it was Lujan's insistence

10

that without a continuance, the purported ethical dilemma he faced would force him to resign, resulting in a mistrial for the now-unrepresented Crowe. And in any event, there is no evidence that the district court's mistake, which the government unfortunately adopted, was anything other than a sincere one.

* * *

Ultimately, with little consideration of the real practical challenges imposed on the district court by Crowe's counsel's abusive tactics, the majority here rewards that gamesmanship, permitting someone who allegedly killed others for his own financial gain to simply walk free. If that were what the Constitution or precedent required, I would go along. But they don't. The district court made an honest mistake, but not one that would be uncorrectable on remand. I thus respectfully dissent.