**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Leung Tak LUN, Chico Wong, and Andrew Wong, Defendants–Appellants.**

**Nos. 90–10510 to 90–10512.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 19, 1991.

Decided Sept. 20, 1991.

---

Gilbert Eisenberg, Filippelli & Eisenberg, James Larson, and Richard B. Mazer, San Francisco, Cal., for defendants-appellants.

Eric Swenson, Asst. U.S. Atty., San Francisco, Cal., for plaintiff-appellee.

Before GOODWIN and SNEED, Circuit Judges, and TAYLOR *, District Judge.

TAYLOR, District Judge:

This heroin importation and possession trial was the first time the People's Republic of China and the United States joined to investigate and prosecute a criminal of-

fense. It ended disastrously. The district court granted a defense mistrial motion after a government witness changed his story and other witnesses left the country. Defendants now appeal the denial of their motion to dismiss the indictment on double jeopardy grounds. We hold the defendants have failed to show the conduct leading to the mistrial motion was intended to provoke them into moving for a mistrial, and accordingly affirm.

## I. BACKGROUND

In March 1988, customs brokers of the People's Republic of China at the Shanghai Airport discovered heroin hidden inside a shipment of goldfish destined for San Francisco. Chinese police officials arrested Wang Xong Xiao ["Wang"], a Chinese citizen, after determining he was responsible for arranging the shipment. During interrogations, Wang allegedly confessed to assisting appellant Leung Tak Lun ["Leung"], a Hong Kong resident, ship the drugs to the United States. Chinese officials arrested Leung, and notified the United States Drug Enforcement Agency of the pending shipment. DEA agents seized the shipment when it arrived in San Francisco and arrested appellants Chico Wong and Andrew Wong. The Chinese government extradited Leung to the United States, and U.S. federal prosecutors indicted all three appellants for conspiracy to import and possess heroin with intent to distribute, in violation of 21 U.S.C. §§ 846, 952(a), and 963.

In what apparently was the first time the People's Republic of China cooperated with another country to prosecute a defendant charged with a criminal offense, China sent Wang and five Chinese investigating officials to the United States to assist the U.S. Government at the appellants' trial. The Chinese officials testified during the first month of the trial.

Finally, Wang was called as a witness, and he testified for several days. Then the

---

* Honorable Gary L. Taylor, U.S. District Judge, Central District of California, sitting by designation.

unexpected happened. In summary, Wang filed a petition for political asylum and told the court that his Chinese captors had coerced and tortured him to confess falsely. He said he was ordered by his captors to testify falsely at trial according to a "script" created by the Chinese officials. He said his courtroom testimony had been false in many respects, under the threat that failure to comply with his captors demands would lead to a death sentence when he got back to China.

Thereupon, defendants moved to dismiss the indictment, for mistrial, or, in the alternative, to strike Wang's testimony. A few days later, defendants learned that the Chinese officials were planning to go back to China before they could be examined in court about Wang's claims, and defendants requested the prosecutor to stop them. However, the Chinese officials left for China a few days later, without being examined. At a hearing on the matter, the court granted defendants' motion for mistrial over the government's objection but denied the motion to dismiss.

Defendants then moved to dismiss, claiming that the Double Jeopardy Clause of the Fifth Amendment bars the government from retrying them. The district court denied the motion, and defendants bring this interlocutory appeal challenging that ruling. 28 U.S.C. § 1291; *Abney v. United States*, 431 U.S. 651, 659, 97 S.Ct. 2034, 2040, 52 L.Ed.2d 651 (1977).

A district court's denial of a motion to dismiss on double jeopardy grounds is generally reviewed *de novo*. *United States v. Schwartz*, 785 F.2d 673, 676 (9th Cir.), *cert. denied*, 479 U.S. 890, 107 S.Ct. 290, 93 L.Ed.2d 264 (1986). However, factual findings concerning governmental conduct, upon which the denial is based, are reviewed for "clear error." *United States v. McConney*, 728 F.2d 1195, 1203 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984); *United States v. Mitchell*, 736 F.2d 1299, 1304 (9th Cir.1984), *cert. denied*, 474 U.S. 830, 106 S.Ct. 94, 88 L.Ed.2d 77 (1985).

## II. DISCUSSION

■ Where a mistrial has been declared at the request of the defendant, the Double Jeopardy Clause is no bar to retrial unless the defendant can show that the "conduct giving rise to the successful motion for mistrial was intended to provoke the defendant into moving for a mistrial." *Oregon v. Kennedy*, 456 U.S. 667, 679, 102 S.Ct. 2083, 2091, 72 L.Ed.2d 416 (1982). Defendants contend on this appeal that government misconduct provoked or "goaded" the defendants into moving for a mistrial.

■ Defendants do not deny that the prosecutor vigorously opposed defendants' mistrial motion, orally and in writing, at every opportunity. Additionally, the trial court found the prosecutor's actions "were not calculated to induce defendants to request a mistrial." The district court judge had numerous opportunities to observe the prosecutor's conduct during more than a year of pretrial preparations, about a month of trial, and about a week while mistrial issues were under contention.

Appellants attempt to overcome these factors by arguing the prosecutor's opposition to mistrial was merely a facade: The prosecutor hoped defendants would seek, and the court would grant, a mistrial. Appellants present three categories of objective factors to support this position.

First, defendants contend the government's case was going badly, causing the prosecutor to fear acquittal and affirmatively to seek a mistrial. *See, United States v. Curtis*, 683 F.2d 769 (3rd Cir. 1982) (the appellate court held no intent to provoke mistrial, in part because there was no evidence the government feared acquittal), *cert. denied*, 459 U.S. 1018, 103 S.Ct. 379, 74 L.Ed.2d 512 (1982). Defendants note that, even before Wang took the stand, the trial court had admonished the prosecutor for discovery abuses and warned further abuses could result in mistrial. Additionally, the court excluded, for lack of proper foundation, certain foreign documents such as hotel and travel receipts, which the government sought to introduce to corroborate Wang's testimony. The government's case took a decided turn

for the worse when Wang took the stand. Wang was the government's star witness. After several days of testimony, he filed for political asylum, then stated the Chinese officials used torture to coerce his original confession, and admitted committing perjury. The government's case got progressively worse when appellants made a motion for mistrial and the judge continued the trial until after an evidentiary hearing to decide if Wang's statements were coerced. As the trial court put it, the prosecutor had "lost control of his case."

Appellants are correct that the government's case began to deteriorate after Wang's revelations. But they have not established that the prosecutor believed he would be better off starting a new trial. The Chinese officials—important government witnesses—had left the country and the evidence showed they were not likely to return. At that point, the prosecutor had no way of knowing whether the judge would admit transcripts of their testimony at a second trial, or under what terms. Further, the prosecutor could not have been sure that Wang would still be available to testify at a new trial. Without the Chinese official's direct testimony, the government's case would be very weak; without Wang's testimony, the government had no case. Faced with these uncertainties, it cannot be said the prosecutor was trying secretly to force a mistrial.

Second, defendants argue the government's intent to goad is shown by the advantages the government would gain from a second trial. *See, Curtis,* 683 F.2d 769; *United States v. Zielie,* 734 F.2d 1447 (11th Cir.1984), *cert. denied,* 469 U.S. 1189, 105 S.Ct. 957, 83 L.Ed.2d 964 (1985), *cert. denied,* 469 U.S. 1216, 105 S.Ct. 1192, 84 L.Ed.2d 338 (1985); *United States v. Coleman,* 862 F.2d 455 (3rd Cir.1988), *cert. denied,* 490 U.S. 1070, 109 S.Ct. 2074, 104 L.Ed.2d 638 (1989).

Defendants imply the prosecutor urged the Chinese officials to leave the country, thereby procuring the important advantage at the retrial of being able to introduce their direct testimony by transcript, without cross-examination about Wang's revelations. This is of particular significance because these officials testified *before* Wang's revelations, so defendants never had the chance to cross-examine them about this new evidence. The district court stressed this significance:

> [The Chinese officials] weren't fairly cross-examined. These horrendous acts performed upon [Wang] by the Chinese police had not become part of the record until [Wang] testified ... [The Chinese officials] said that they interrogated him maybe two or three times between March and May. He testified that he had been interrogated every day, had been beaten, and the truth lies somewhere in between. And no finder of fact could get at the truth unless they had been thoroughly cross-examined on that point.

Additionally, defendants argue the government will have time to regroup, and plan a new strategy in light of Wang's disclosure. For example, the government may bring up this evidence in its opening statement, and try to locate Hong Kong witnesses to lay foundations for evidence excluded in the first trial.

Defendants are correct that the government may gain a benefit by being able to introduce the Chinese official's transcript evidence without further cross-examination.[1] However, it was unknown to the government at the time of the mistrial whether the transcript would be permitted. Also, the district court found, "[T]here is no evidence that [the prosecutor] had any power to prohibit the Chinese officials from leaving. Similarly, there is no evidence that the prosecution in any way urged the Chinese officials to flee." We have no

---

**1.** Several months after the mistrial was granted, the trial court granted the government's motion to permit use at the second trial of transcripts of the Chinese officials' trial testimony. The court ruled the officials were "unavailable" because the People's Republic of China apparently refused to send them back, and there had been an adequate opportunity to cross-examine them on matters they testified to on direct examination. This court makes no ruling on the admissability of such evidence.

reason to question these findings. Thus, defendants' inference that the prosecutor urged the Chinese officials to leave is without support.

Time to regroup and regain control, and the opportunity to soften the negative impact of damaging evidence by defusing it in opening statement, is a fringe benefit of retrial for the government. Yet, there are disadvantages as well. "If the defendant consents to a mistrial, the prosecutor must go to the time, trouble, and expense of starting all over with the criminal prosecution." *Kennedy,* 456 U.S. at 686, 102 S.Ct. at 2095 (Justice Stevens, concurring). Witnesses may disappear or forget their testimony after the long delay.

Additionally, defendants benefit by retrial. They have had the opportunity to see a substantial portion of the government's case-in-chief. They will also have the opportunity to portray the surprising incidents of the first trial in the most beneficial way for their position, from the very outset. Certain aspects of retrial benefit each side and do not demonstrate provocation by the prosecutor to seek a mistrial.

Third, defendants argue the government committed repeated acts of misconduct, which deprived defendants of their primary control over whether to request a mistrial. Such loss of control, they contend, bars retrial. Appellants cite language in *Kennedy* for this claim:

> Where prosecutorial error ... sufficient to warrant a mistrial has occurred, '[t]he important consideration, for purposes of the Double Jeopardy Clause, is that the defendant retain primary control over the course to be followed in the event of such error.'

*Kennedy,* 456 U.S. at 676, 102 S.Ct. at 2089 (quoting *United States v. Dinitz,* 424 U.S. 600, 609, 96 S.Ct. 1075, 1080, 47 L.Ed.2d 267 (1976), *cert. denied,* 429 U.S. 1104, 97 S.Ct. 1133, 51 L.Ed.2d 556 (1977)).

Appellants cite numerous instances of claimed prosecutorial misconduct. Two days before informing the judge, Wang allegedly told the prosecutor he had committed perjury, but the prosecutor kept this information silent. Disregarding the court's admonition, the prosecutor allowed the Chinese officials to attend a meeting between Wang and his court-appointed counsel, where they repeatedly threatened Wang. The prosecutor also tried to set up a private meeting between the Chinese officials and Wang. Additionally, the Chinese officials left the country without permission from the court, even though they knew defendants were going to recall them as witnesses. Defense counsel heard of their anticipated departure through a newspaper article and immediately contacted the prosecutor, but the prosecutor allegedly made no effort to stop them, and they left anyway. Defendants argue the departure of the Chinese officials was a crucial factor which deprived the defense of any control over the decision whether to move for a mistrial.[2]

Even if we assume defendants had no realistic choice but to seek mistrial, this does not bar a retrial. *Kennedy* does not stand for that proposition. Following the passage relied on by defendants, *Kennedy* states, "[o]nly where the governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial ..." 456 U.S. at 676, 102 S.Ct. at 2089. We believe the *Kennedy* Court was simply restating its test as whether the prosecutor intended to take away defendant's control over seeking a mistrial. *Kennedy* further explains, "[p]rosecutorial conduct that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on defendant's motion, therefore, does not bar retrial absent intent on the part of the prosecutor ..." *Id.*

Even if the government's actions removed any meaningful choice for defendants between pushing on with the trial or seeking mistrial, defendants fail to demonstrate the prosecutor "intended" such results.

**2.** This part of the argument is of limited value to defendants because defendants had already moved for mistrial before they learned the Chinese officials intended to leave.

The record shows that Wang's revelations caught everyone off guard and effectively took away everybody's option to continue. Defendants have not established that the prosecutor caused this unexpected sequence of events or intended its outcome. Rather, it appears Mr. Wang's testimony caused both sides to lose control of the case. We affirm.