**UNITED STATES of America,**
**Plaintiff–Appellant,**

v.

**Roy McKOY; Lou Etta McKoy,**
**Defendants–Appellees.**

**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Roy Frank McKOY; Lou Etta McKoy,**
**Defendants–Appellants.**

Nos. 95–10181, 95–10186.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 12, 1996.

Decided March 4, 1996.

Bruce I. Hochman and Steven Toscher, Hochman, Salkin & Deroy, Beverly Hills, California, and C. Stanley Hunterton, Hunterton & Naylor, Las Vegas, Nevada, for defendants-appellees-cross-appellants.

Michael E. Barr, Assistant United States Attorney, Las Vegas, Nevada, and Elizabeth D. Collery, United States Department of Justice, Washington, DC, for plaintiff-appellant-cross-appellee.

Before: HUG and FERNANDEZ, Circuit Judges, and KELLEHER,* District Judge.

FERNANDEZ, Circuit Judge:

Roy Frank McKoy and Lou Etta McKoy were indicted for willfully subscribing false income tax returns. 26 U.S.C. § 7206(1). Trial commenced, but a mistrial was declared because of Jencks Act[1] violations by the government. 18 U.S.C. § 3500. A new trial was set. The McKoys then asserted that retrial was barred by their right to be free from double jeopardy. The district court denied their motion, but suppressed the use of testimony from two government witnesses. Both the McKoys and the government appealed. We affirm in part, reverse in part, and remand.

## BACKGROUND

A federal grand jury for the district of Nevada indicted the McKoys on three counts of willfully subscribing false federal income tax returns for the years 1987, 1988, and 1989. 26 U.S.C. § 7206(1). The indictment charged that the McKoys underrepresented their adjusted gross income by several hundred thousand dollars for each of the years in question.

Before their first trial, the McKoys made a discovery motion in which they asked for all statements made by Santillo Troy, Joan Lengacher, Andrew Tomaro, and Danny Tomaro. The government agreed that it would produce all Jencks Act[2] materials thirty days before trial. It did produce much of the promised material even earlier than that. However, other material was not produced until the very day of trial, January 26, 1995.

A few days later, Daniel Tomaro testified for the government. During cross examination it became apparent that there had been a meeting between Tomaro and a government agent, but that no memorandum of that meeting had been produced before cross examination commenced. The Assistant United States Attorney explained that he thought that the statement had been produced on the first day of trial, although, apparently, it had not been. The government then produced it, and the district court admonished the government to make sure that there were no more mistakes of that kind, lest "severe consequences" ensue.

Alas, more mistakes occurred. On January 31, 1995, Joan Lengacher testified and was excused. On February 1, 1995, Santillo Troy testified and was excused. On February 2, 1995, the sixth day of trial, the government announced that it had discovered additional Jencks material regarding the testimony of Lengacher and Troy. The AUSA explained that the material had been kept by Agent Burns, that Burns did not realize he had to supply it, and that it had not come to counsel's attention until the previous evening.

In response to these undoubted violations of the Jencks Act, the McKoys moved to strike the testimony of Lengacher and Troy or for a mistrial. The district court gave defense counsel an opportunity to review the newly submitted materials and heard argument from both parties. It then determined that it would not be fair to go forward with the trial, but that the government had not acted in bad faith. So, it said, "[t]he defense has appropriately moved for a mistrial. I clearly understand why. In fairness to their clients, they find it necessary to do that, and that's why I grant the motion."

A retrial was scheduled, but the McKoys moved to dismiss the indictment on grounds of double jeopardy or to suppress the testimony of Lengacher and Troy. The district court refused to dismiss, but did order suppression of the testimony because, as it said, "the Government should not be allowed to escape sanctions for its failure to timely provide the Jencks materials after being specifically admonished by this Court to do so two days earlier." Neither side was satisfied, so these appeals ensued.

---

* The Honorable Robert J. Kelleher, Senior United States District Judge, United States District Court for the Central District of California, sitting by designation.

1. The Act takes its name from *Jencks v. United States*, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957).

2. *See* 18 U.S.C. § 3500; Fed.R.Crim.P. 26.2.

## JURISDICTION AND STANDARDS OF REVIEW

██ We have jurisdiction to entertain an appeal from the denial of a motion to dismiss an indictment on double jeopardy grounds. *See Abney v. United States,* 431 U.S. 651, 663, 97 S.Ct. 2034, 2042, 52 L.Ed.2d 651 (1977); *United States v. Szado,* 912 F.2d 390, 393 (9th Cir.1990). We also have jurisdiction to entertain an appeal by the government from an order of the district court suppressing or excluding evidence provided that the government "certifies to the district court that the appeal is not taken for delay and that the evidence is a substantial proof of a fact material in the proceeding." 18 U.S.C. § 3731; *United States v. Becker,* 929 F.2d 442, 444–45 (9th Cir.), *cert. denied,* 502 U.S. 862, 112 S.Ct. 183, 116 L.Ed.2d 145 (1991); *United States v. Eccles,* 850 F.2d 1357, 1359–60 (9th Cir.1988). The notices of appeal were timely, and the government has made the necessary certification. Thus, we do have jurisdiction to hear both interlocutory appeals.

██ We review *de novo* a district court's denial of a motion to dismiss on double jeopardy grounds. *United States v. Sammaripa,* 55 F.3d 433, 434 (9th Cir.1995). We review a district court's decision regarding the imposition of sanctions for a Jencks Act violation for an abuse of discretion. *See United States v. Echeverry,* 759 F.2d 1451, 1456 (9th Cir. 1985); *cf. United States v. Parker,* 549 F.2d 1217, 1224 (9th Cir.), *cert. denied,* 430 U.S. 971, 97 S.Ct. 1659, 52 L.Ed.2d 365 (1977).

## DISCUSSION

The McKoys assert that their double jeopardy rights will be violated by a new trial because they did not consent to a mistrial and that at the very least the testimony of the government witnesses must be suppressed. They are incorrect in both respects. The government asserts that the district court had no ability to suppress witness statements after it had granted the mistrial and that it certainly could not do so in this case. We disagree with the government's first contention, but the second one has merit.

### A. *Double Jeopardy.*

██ It is a commonplace that "[t]he Double Jeopardy Clause of the Fifth Amendment protects a person from being 'twice put in jeopardy of life or limb' for the same offense." *Weston v. Kernan,* 50 F.3d 633, 636 (9th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 351, 133 L.Ed.2d 247 (1995). Moreover, there can be no doubt that jeopardy attached when the first jury was impaneled and sworn. *See Sammaripa,* 55 F.3d at 434. Of course, that leaves the question of what the effect of a mistrial may be, but it is a question with a relatively clear answer.

██ When a court declares a mistrial, "retrial will only be permitted if the defendant consented to the mistrial or if the mistrial was caused by 'manifest necessity.'" *Weston,* 50 F.3d at 636 (citing *Arizona v. Washington,* 434 U.S. 497, 505, 98 S.Ct. 824, 830, 54 L.Ed.2d 717 (1978)). "Where a mistrial has been declared at the request of the defendant, the Double Jeopardy Clause is no bar to retrial unless the defendant can show that the 'conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial.'" *United States v. Lun,* 944 F.2d 642, 644 (9th Cir.1991) (quoting *Oregon v. Kennedy,* 456 U.S. 667, 679, 102 S.Ct. 2083, 2091, 72 L.Ed.2d 416 (1982)).

In this case it is apparent, and the district court found, that the government did not intentionally goad the McKoys into seeking a mistrial. They do not contend the contrary. They hardly could. As the district court pointed out, the government attempted to talk it out of doing anything but granting a continuance to the McKoys at the first trial, the case was not going badly for the government, and it could not be said that the government would gain an advantage if a mistrial were granted. *See Lun,* 944 F.2d at 644–46. That leaves the McKoys with the argument that they did not consent to a mistrial, an argument that has no real force in light of the fact that they asked the court to grant one. *See Kennedy,* 456 U.S. at 679, 102 S.Ct. at 2091.

■ The McKoys attempt to avoid this almost apodictic result by asserting that they had no control over the choice of remedy. They rely upon our holding that when a defendant has "practically no control" over the mistrial decision and "is not responsible for the termination of his trial," the double jeopardy bar applies. *United States v. Dahlstrum*, 655 F.2d 971, 976 (9th Cir.1981), *cert. denied*, 455 U.S. 928, 102 S.Ct. 1293, 71 L.Ed.2d 472 (1982). In doing so they read *Dahlstrum* in a manner that would put it in conflict with *Kennedy*. But in *Dahlstrum* we did not declare that where a defendant moves for alternate forms of relief he is then out of control if the district court selects one of them. In that case, the district court had *sua sponte* declared a mistrial and did not even ask for the defendant's opinion on the question. *Id.* at 975. That, of course, is far different from the situation that we are faced with. Nor does the mere fact that the McKoys may have felt compelled to ask for the mistrial alternative mean that they can now claim double jeopardy. As we have said, "[e]ven if we assume defendants had no realistic choice but to seek mistrial, this does not bar a retrial. *Kennedy* does not stand for that proposition." *Lun*, 944 F.2d at 646. In short, the district court did not err when it denied the double jeopardy motion.

### B. *Suppression of Statements.*

■ There can be little doubt that the government ran afoul of discovery strictures when it failed to make a timely disclosure of witness statements. The Jencks Act was violated. 18 U.S.C. § 3500(b). So was Federal Rule of Criminal Procedure 26.2(a), which contains the substance of the Jencks Act.[3] *See United States v. Conners*, 825 F.2d 1384, 1389 (9th Cir.1987). Both the Jencks Act and Federal Rule of Criminal Procedure 26.2 provide for the production of statements made by government witnesses after those witnesses have testified on direct examination. 18 U.S.C. § 3500(b); Fed.R.Crim.P. 26.2(a); *see generally Palermo v. United States*, 360 U.S. 343, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1959). Each also provides for sanctions in the event that the government does not comply with its provisions. The Jencks Act provides that:

> If the United States elects not to comply with an order of the court . . . , the court shall strike from the record the testimony of the witness, and the trial shall proceed unless the court in its discretion shall determine that the interests of justice require that a mistrial be declared.

18 U.S.C. § 3500(d). The Federal Rules of Criminal Procedure phrase the sanction provision somewhat differently, but retain the disjunctive form: "[T]he court shall order that the testimony of the witness be stricken from the record and that the trial proceed, or . . . shall declare a mistrial if required by the interest of justice." Fed.R.Crim.P. 26.2(e).

The government seizes upon the disjunctive form of this language to argue that a district court may *never* impose both the sanction of a mistrial and the sanction of suppressing the testimony of the witness when a Jencks Act violation occurs. It asserts that the grammatical structure leads inexorably to that conclusion. We agree that application of the usual rules of grammar is an important guide to determining the plain meaning of a statute or rule, but the demands of grammar are not always obvious. *See, e.g., United States v. X–Citement Video, Inc.*, —— U.S. ——, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994).

The provisions in question are not quite as simple as a statement to a child that he may have an apple or an orange, a statement that almost necessarily implies he cannot have both. These discovery provisions have a more complex basis. They are intended to confer upon district courts the ability to remedy the harms caused when the government does not fulfill its discovery obligations. We can readily imagine that the framers of the provision expected that it would be an unusual case when both sanctions were needed, but it is considerably more difficult to imagine that they intended to prohibit district courts from using both regardless of the circumstances. A motion for production of Jencks Act materials is an important discovery tool,

---

3. The Jencks Act has not been repealed, but its use may be limited by Rule 26.2. *See* 2 Charles A. Wright, Federal Practice and Procedure § 437, at 586 (1982).

and flexibility is needed, just as it is needed in other types of discovery. *Cf.* Fed. R.Crim.P. 16. In general "the administration of the Jencks Act must be entrusted to the 'good sense and experience' of the trial judges subject to 'appropriately limited review of the appellate courts.'" *United States v. Augenblick,* 393 U.S. 348, 355, 89 S.Ct. 528, 533, 21 L.Ed.2d 537 (1969) (citation omitted); *see also Slye v. United States,* 602 A.2d 135, 138 (D.C.App.1992).

■ We, of course, recognize that, as a matter of logic, the court cannot impose both sanctions in a single proceeding. If the court orders a mistrial, there is essentially no testimony left to strike. Likewise, if the court strikes the testimony of a witness, it implies that the trial will continue. However, the language of the provisions does not expressly state that the district court cannot impose the sanction of mistrial at the first trial proceeding and then impose the sanction of suppression on the retrial proceeding. An example of an instance where that was appropriate is found in *United States v. Well,* 572 F.2d 1383 (9th Cir.1978) (per curiam).

In *Well,* we affirmed the imposition of sanctions against the government for a Jencks Act violation. The district court had *sua sponte* granted a mistrial after it was discovered that the government had failed to turn over tape recordings of its witnesses and that the tapes had been erased. *Id.* at 1384. Before the retrial, the district court also granted Well's motion to suppress the testimony of the witnesses whose interviews had been tape recorded. We affirmed the district court's imposition of both sanctions— the mistrial and the suppression of the witnesses' prior testimony. *Id.* at 1385. Those are the sanctions imposed by the district court in this case. However, in *Well* the information could never be made available; it was lost forever. Thus, if the witnesses could testify at the new trial, that would lead to another mistrial and then another and another ad infinitum. To avoid that absurdi-

ty, it was necessary to preclude the witnesses from testifying at all. The continuing violation simply demanded both penalties.

In sum, while we agree that it is difficult to envision many instances where the imposition of dual sanctions would be necessary or appropriate, that is not to say that there are none. *Well* explicates one instance, and by testing the rule the government argues for, it demonstrates that the rule itself would be deficient. The question, then, is whether this case is one of those special instances, that is, whether the district court properly exercised its sanctioning discretion. We hold that it did not.

■ In imposing sanctions against the government for violations of the Jencks Act, the district court should consider the "culpability of the government ... and the injury to the defendants." *United States v. Finnegan,* 568 F.2d 637, 642 (9th Cir.1977); *see also Echeverry,* 759 F.2d at 1456 (affirming denial of motion for sanctions where the government conduct was inadvertent); *United States v. Sterling,* 742 F.2d 521, 524–25 (9th Cir.1984), *cert. denied,* 471 U.S. 1099, 105 S.Ct. 2322, 85 L.Ed.2d 840 (1985) (same); *United States v. Polizzi,* 500 F.2d 856, 893–94 (9th Cir.1974), *cert. denied,* 419 U.S. 1120, 95 S.Ct. 802, 42 L.Ed.2d 820 (1975) (same).

■ The government was not without fault. Its coordination of discovery was far from crisp. Earlier in the trial, it had failed to provide Jencks material in a timely fashion, and the district court had admonished it to be more careful or face "serious consequences." [4] Just two days later, the government admitted that it had again failed; additional material regarding its witnesses Lengacher and Troy was discovered after both of them had testified and been excused. The government explained that the problem had resulted from a series of misunderstandings and miscues between government agents. To his credit, as soon as the AUSA

---

4. The McKoys point to still another instance where the government provided Jencks material somewhat late. It provided the material on the first day of trial, even though it had previously represented that all of the material had been provided on November 1, 1994. Technically,

however, that did not constitute a violation of the Jencks Act. *See* 18 U.S.C. § 3500(a) (material not required to be disclosed until after the witness has testified). For the same reason it was not a violation of Federal Rule of Criminal Procedure 26.2.

became aware of the material he brought it to everyone's attention.

The district court recognized that there was a possibility of prejudice to the McKoys if the first trial continued, but also recognized that the government had unintentionally erred. The court balanced all of that—prejudice versus culpability—in reaching its conclusion that a mistrial was the proper remedy. As it said, "To strike the testimony of these witnesses, however, absent any basis to find that there was bad faith or misconduct on the part of the Prosecution, ... would be unfair to the Government and a windfall to the defense." However, prior to the retrial the court went on to suppress the testimony of Lengacher and Troy because, as it said, "it would be unjust for the hardship that is the result of the Government's negligent actions to fall solely on Defendants' shoulders."

The district court was correct the first time. The record shows that each time the district court sanctioned the government, it weighed the culpability of the government and the injury to the McKoys. *See Finnegan*, 568 F.2d at 642. In neither instance did if find intentional wrongdoing on the government's part, and even in its second ruling it failed to find prejudice to the McKoys. What it did say was that the hardship should not rest solely upon the McKoys. But the hardship did not rest upon them alone, and the district court recognized as much in its ruling on the double jeopardy motion, where it pointed out the harms that the government would suffer.

■ The purpose of production of statements is to give defendants impeachment materials at a time when they can effectively use them. *See Jencks*, 353 U.S. at 666–69, 77 S.Ct. at 1012–13. That objective was fulfilled when the court granted a mistrial because the impeachment material was placed in the McKoys' hands long before the witnesses were to testify. Indeed, as far as the retrial is concerned, the McKoys had the material far earlier than the Jencks Act would require.

It is true that the McKoys will suffer the nuisance of a new trial. But in exchange for that they have also obtained the mistrial they asked for, they have had an opportunity to see the government put on most of its case, the government cannot gain from surprise, the government will suffer from the possibility that the witnesses' memories will fade further, and the government will also have to expend the added resources needed to participate in another trial. No further sanctions were needed to ensure justice; no further sanctions were appropriate.

## CONCLUSION

The government failed to live up to its discovery responsibilities under the Jencks Act and Rule 26.2. We expect the government to do better than that. On the other hand, we recognize that the government is not a being with ichor in its veins, nor is it a being from a more advanced planet. It is a conglomeration of human beings. Thus, by definition it is imperfect, for humans are neither beasts nor angels. In this case, the district court determined that the imperfection was not due to intentional wrongdoing or bad faith. It also determined that it should grant the McKoys request for a mistrial because that measured response would be fair to the McKoys and to the government. We agree. As a result, the McKoys cannot demonstrate a breach of their double jeopardy protections.

However, the district court should not have gone on to hobble the government by preventing it from calling important witnesses to the McKoys' activities. We fully understand the district court's concern for fairness to the McKoys and can even understand its vexation with the government. However, both parties are entitled to a trial in which important witnesses can be called to testify, subject to informed cross examination. That result was fully accomplished when the mistrial was granted. The additional sanction was not necessary or appropriate. The imposition of it was error.

AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings.