**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

_____

No. 96-3796
_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | Appeal from the United States |
| | * | District Court for the District |
| v. | * | of South Dakota. |
| | * | |
| Charles Lee Richards, Jr., | * | |
| | * | |
| Appellant. | * | |

_____

Submitted:  May 20, 1997

Filed:  July 21, 1997

_____

Before  RICHARD S. ARNOLD, Chief Judge, and BOWMAN and MORRIS SHEPPARD ARNOLD, Circuit Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Charles Lee Richards, Jr., appeals from the judgment of guilty entered against him for aggravated sexual abuse in violation of 18 U.S.C. § 2241(a)(1) following his conviction by a jury.  We affirm the judgment of the trial court.[1]

_____

[1]The Honorable Richard H. Battey, Chief Judge, United States District Court for the District of South Dakota.

After a party that lasted well into the early morning hours, Mr. Richards agreed to drive Shiloh White to her stepfather's house. After a short visit there, Mr. Richards began driving Ms. White back home, but at some point turned into a dirt road and stopped the car. Here, the stories diverge. Ms. White testified that Mr. Richards forcibly raped her, while he testified that she, for various reasons, fabricated a story and that, in fact, they did not even have sexual intercourse.

During trial, the prosecution relied heavily on the testimony of Ms. White and did not attempt to make its case with physical evidence. The prosecution never asked Ms. White, for example, whether Mr. Richards ejaculated inside her. When the defense raised the issue of ejaculation on cross-examination, moreover, Ms. White stated that she was unsure whether the defendant had ejaculated and that "it" (referring to the intercourse) happened "real quick, just 'Boom.' " When the doctor who later examined Ms. White testified on direct examination that she found a white fluid inside Ms. White that had the odor and consistency of semen, the prosecution assiduously refrained from asking whether it was later identified as such by the FBI laboratory. On cross-examination, however, the defense did ask the doctor whether the fluid was later identified as semen, and she testified that it was.

Because the defendant wanted to introduce evidence that the semen found inside Ms. White was not determined to be Mr. Richards's, and the government wished to avoid producing the relevant witnesses, the parties stipulated that the white fluid found inside Ms. White was identified as semen by the FBI laboratory but that there was not enough to perform DNA analysis to determine its source. The government read that stipulation to the jury at the end of its case-in-chief.

Because the source of the semen was indeterminable, the government did not maintain at trial that the semen belonged to Mr. Richards, or even that semen had been found inside Ms. White. During its case-in-chief, however, the defense attempted to

introduce testimony that Ms. White allegedly had intercourse with several other people at the party immediately prior to the altercation with Mr. Richards, in order to show another source for the semen found inside her. The trial court refused to admit the testimony, relying on Fed. R. Evid. 412(a)(1), and instructed the jury that the government did not contend that Mr. Richards was the source of the semen and that therefore the jury could not consider that evidence in deciding whether he was guilty.

## II.

Mr. Richards contends that the trial court erred in preventing him from presenting the evidence of an alternate source for the semen pursuant to Fed. R. Evid. 412. That rule, commonly known as the "Rape Shield Rule," generally prohibits the admission of evidence of a prosecuting witness's prior sexual acts. See Fed. R. Evid. 412(a)(1). It allows the admission of such evidence, however, to "prove that a person other than the accused was the source of semen, injury or other physical evidence." See Fed. R. Evid. 412(b)(1)(A). Mr. Richards argues that since the existence of the semen was in evidence, he should have been allowed to show an alternate source for it.

In other circumstances, we might well agree with this argument in principle, and if the government had introduced the semen to prove its case, Mr. Richards might well have a point. We believe, however, that the rule does not allow for the admission of such evidence when it was the defendant's decision, and not the prosecution's, to introduce the existence of the semen into evidence in the first instance. Were we to hold otherwise, a defendant could bootstrap himself into the exceptions contained in Fed. R. Evid. 412(b)(1).

In cases in which the prosecution studiously avoids introducing any evidence of semen in a prosecuting witness, it will probably often be to prevent inquiries into her prior sexual activities. If there is no mention of semen at all, it is of course clear that a defendant could not introduce evidence of such activities. United States v. White

Buffalo, 84 F.3d 1052, 1054 (8th Cir. 1996). To permit a defendant to introduce the existence of the semen and then, as a consequence, allow him to introduce evidence of past sexual activities, would allow the rule to be short-circuited.

We believe, moreover, that any possible error in not admitting the evidence was harmless. At trial, the prosecution and the defense each emphasized the credibility (or lack of credibility) of the witnesses. The prosecution relied, for example, on Ms. White's testimony as to what occurred, and not on physical evidence. The defense, in turn, repeatedly tried to impeach Ms. White with her intoxication and what the defense characterized as her prior inconsistent statements. Both the doctor and the woman at the house where Ms. White ran for help, however, testified to prior statements by her that were consistent with her testimony at trial. The prosecution also thoroughly impeached the defendant's testimony by showing that he had changed his story several times about what happened after the two left the party and by discrediting, with blood analysis, his claim that the two consumed cocaine together and that she became angry because he would not get her more of the drug, thus providing her with a motive to fabricate a story. The defense emphasized Mr. Richards's credibility, bringing in, for example, two character witnesses to testify to his reputation for truthfulness. Given the emphasis at trial on the stories of Mr. Richards and Ms. White, and the weak probative value that her alleged sexual activities would have had in that context, we believe that any error associated with the exclusion of the proffered testimony was harmless.

Mr. Richards also argues that the government's evidence was insufficient to support his conviction because both he and Ms. White were intoxicated at the time of the relevant events, necessarily leaving a reasonable doubt as to who was telling the truth. After a careful review of the record in the light most favorable to the jury's verdict, United States v. Wonderly, 70 F.3d 1020, 1023 (8th Cir. 1995), cert. denied, 116 S. Ct. 1443 (1996), we disagree. Although Ms. White admitted that she was intoxicated at the party, testimony concerning her activities the next morning indicated

-4-

that the level of her intoxication had been reduced. The woman to whose house Ms. White ran for comfort after leaving Mr. Richards, for example, hugged her and testified that she did not smell alcohol on her breath; and although the doctor who examined her did smell alcohol, she stated that it did not seem to affect what Ms. White told her. The extent of Ms. White's intoxication, if any, was a matter for the jury to resolve, and, after carefully reviewing the record, we believe that sufficient evidence exists to support the jury's conclusion that her testimony was credible despite her intoxication at the party.

Mr. Richards last asserts that the trial court erred in instructing the jury that, because the government did not contend that he was the source of the semen collected from Ms. White, it could not consider that evidence as a fact proving his guilt. Mr. Richards appears to argue that this instruction was error because it had an "inferential prejudicial effect" on him, but he fails to direct our attention to any relevant cases, or even to state any legal principles that he believes support his position. We therefore decline to consider this argument. See, e.g., United States v. Gonzales, 90 F.3d 1363, 1369-70 (8th Cir. 1996).

### III.

For the foregoing reasons, we affirm Mr. Richards's conviction.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-5-