**UNITED STATES of America, Plaintiff,**

v.

**Gary Allen DOG TAKING GUN, Defendant.**

**No. CR 98–13–M–DWM.**

United States District Court, D. Montana, Missoula Division.

June 3, 1998.

Lori A. Harper, Office of the U.S. Atty., Great Falls, MT, for U.S.

Morgan M. Modine, Modine Law Office, Missoula, MT, for Defendant.

## ORDER AND OPINION

MOLLOY, District Judge.

### I. Pending Issues

The issue presented in this case is whether the FBI Laboratory inefficiency in processing DNA evidence preempts the defendant's statutory right to a speedy trial. In my view it does not. A more problematic issue is whether a defendant should be allowed to use the statutory "right" to a speedy trial in a way the keeps the government from using relevant evidence that ought to be presented to a jury. In my view it does not. There is also an issue here concerning evidence of the putative victim's alleged sexual conduct with others. In my view, the motion may be well taken.

Consequently, I deny defendant's motion to suppress the DNA evidence because it was not timely produced. I find defendant's ar-gument about evidence of the alleged victim's past sexual behavior persuasive. F.R.Evid. 412(c). I grant the Government's request for a continuance. In so doing I find none of the time from the date of this order until the date set for trial is excludable time under the Speedy Trial Act, 18 U.S.C. § 3161(h)(8)(C). The time from the filing of the motion to suppress and the motion to determine the admissibility of evidence is excludable. 18 U.S.C. § 3161(h)(1)(F).

## II. Factual Background.

On March 2, 1997, Jo Clayre Trobley Running Crane accused Gary Dog Taking Gun of forcing her to have sex in the front seat of a vehicle. Based on her complaint, the FBI began an investigation. On March 5, 1997 Dog Taking Gun voluntarily provided blood samples, pubic hair samples, and saliva samples for examination and DNA evaluation by the FBI. On the same day a rape kit was obtained from Jo Clayre Trombley Running Crane. It too was given to the FBI. The Agency also had other evidence seized from the vehicle pursuant to a search warrant. On March 5, 1997, the United States had within its possession, custody, and control the physical evidence to be used in proving a case against Dog Taking Gun. The FBI and the FBI lab apparently did nothing meaningful with the evidence but store it.

February 23, 1998, nearly a year after the alleged crime, Dog Taking Gun was indicted. Thereafter, I entered an Order setting a schedule for all Pre-trial procedures including setting a date for disclosure of reports, examinations, and scientific test results. On May 8, 1998, the FBI lab sent results of the DNA comparisons, but not all of the test information relied on by it. The Assistant United States Attorney immediately faxed the report to defense counsel when she received it. Before obtaining the DNA report, the Assistant United States Attorney continued to harp at the FBI lab on a daily basis in an effort to get the evidence in a timely manner. It is undisputed that the United States did not comply with the pre-trial order (U.S. Opposition Brief to Defendant's Motion to Suppress p 1. L 18).

Gary Allen Dog Taking Gun wants the DNA evidence suppressed because the government did not produce DNA samples in time for him to have them tested prior to trial. The argument is that defendant cannot adequately prepare for trial without expert assistance. He denies perpetrating the offense charged, and the DNA evidence is critical to all parties.

## A. The Explanation for Tardiness

The Assistant United States Attorney is without blame here, and there is no contention she was acting in bad faith. The problem stems from the explanation given by the FBI lab and its failure to diligently process the evidence the government had in its possession, custody, and control. The explanation given is that:

"the workload experienced at the FBI laboratory makes it almost impossible to obtain DNA testing results within a year of submission if the United States obtains an indictment and receives a trial date. If the United States chooses to wait to seek an indictment until a written report is in hand, however, the case languishes even longer. The United States is given what is best described as a Hobson's choice. The United States cannot obtain a report from the FBI laboratory in a period of time that allows it to present a viable prosecution and meet the needs of the victim without seeking a indictment and obtaining a trial date. A trial date places a case at the 'front of the line' at the FBI laboratory. By seeking an indictment before the United States has a written report in had, however, can result in the problem faced by the United States in this case—the United States runs the risk of being unable to comply with the discovery deadline set by the Court." (U.S. Brief p 2–3).

The long and the short of it is that the FBI is too busy. The remedy suggested by the United States is a continuance, not suppression of the evidence. Rule 16(c)(2), F.R.Crim.P. sets out the options. ([T]he court may order [the United States] to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing the evidence not disclosed, or it may enter such other order as it deems just under the circumstances). The suggested remedy is at odds with the Speedy Trial Act, 18 U.S.C. § 3161(h)(8)(C) ("No continuance shall be granted [in the interests of justice] because of general congestion of the court's calendar, or lack of diligent preparation, or failure to obtain available witnesses on the part of the attorney for. the Government").

The answer here is to enforce the letter and spirit of both the Federal Rules of Criminal Procedure and the Speedy Trial Act.

## B. DNA Evidence

Under Rule 16(a)(1)(D), the government must allow the defendant to inspect results of scientific evidence within its possession, custody or control if the evidence may be used at trial. The government argues that the results of the DNA testing were not available until May 8, 1998 and were turned over to the defendant immediately upon their receipt. Consequently it is urged that even though the pre-trial order was not complied with, and even though no request for additional time to comply was asked for, the problem is excusable because no one acted in bad faith.

The defendant sees the situation differently. He argues that he should be able to have the DNA samples tested independently and that this will take two to four months. Dog Taking Gun supports his position with the affidavit from a Montana lawyer who recently dealt with DNA evidence. The argument continues and urges that because the government failed to produce the DNA test results before the discovery deadline, the defendant has been prejudiced. He argues that the production of the DNA test results prior to the discovery deadline would still not have allowed Dog Taking Gun time to have the DNA proof evaluated before trial. The only way the defendant can independently test the DNA prior to trial is if the trial date is continued. But, he does not want to waive his speedy trial rights. Implicit in Dog Taking Gun's argument is a claim that he is being denied the right to the meaningful assistance of counsel, to the meaningful confrontation and cross examination of the government's witnesses, and that he is the one with the Hobson's choice: An unfair trial or the waiver of his statutory right to a speedy

trial, already more than a year after the alleged crime.

■ Fashioning remedies for discovery violations is within the district court's discretion. The sanction imposed should be in proportion to the conduct of counsel, and should not be harsher than necessary to accomplish the goals of Rule 16. *United States v. Gee,* 695 F.2d 1165, 1169 (9th Cir.1983). Suppression of evidence is not necessarily warranted when discovery deadlines have not been met. In assessing the best way to proceed where discovery violations have occurred, I am required to evaluate the government's conduct and the possibility of accommodating the defendant's need for additional time. *See, United States v. Baker,* 10 F.3d 1374, 1398 (9th Cir.1993).

The government argues here that a continuance is the proper remedy. *United States v. McKoy,* 78 F.3d 446 (9th Cir.1996). In *McKoy,* the Court indicated that in fashioning a remedy for failure to comply with discovery requests, the culpability of the government should be balanced with prejudice to the defendant. Any sanction imposed should be appropriate to ensure justice. Here, the government lawyer's culpability in the delay in production of DNA evidence is slight. The "too busy" position of the FBI lab is a horse of a different color. While the lab may be overworked, and indeed while the lab undoubtedly has many other cases to deal with, that cannot be the driving force in resolving a defendant's right to a speedy and fair public trial.

■ Dog Taking Gun will be prejudiced if he does not have a meaningful opportunity to prepare his defense, and to have the DNA evidence independently evaluated. His denial of culpability makes the evidence particularly relevant especially given the persuasive character of DNA evidence. The appropriate remedy under these facts is to grant a continuance. A continuance will give the defendant sufficient time to have the DNA evidence tested. It will give his lawyer adequate time to prepare to confront and to cross examine the government's witnesses in this highly technical area. Suppression of the evidence is not warranted. See, *United States v. Baker,* 10 F.3d 1374, 1398 (9th

Cir.1993); *United States v. McKoy,* 78 F.3d 446 (9th Cir.1996).

## C. The conflict with the Speedy Trial Act.

■ The delay in trial caused by the continuance is not excludable time.

"No continuance under subparagraph (A) [in the interests of justice] shall be granted because of general congestion of the court's calendar, or lack of diligent preparation or failure to obtain available witnesses on the part of the attorney for the Government." 18 U.S.C. § 3161(h)(8)(C).

The Speedy Trial Act manifests a Congressional intent that the District Court practice of granting continuances as a matter of course is unacceptable. *United States v. Perez–Reveles,* 715 F.2d 1348, 1352 (9th Cir. 1983). The purpose of the act militates against all but the most necessary delays. The Act prohibits excluding from time computations under the law, the delay caused by a continuance in two specific situations: (1) when it is sought because of general congestion of the trial court's calendar or (2) when it is sought by the government because of its lack of diligent preparation or its failure to obtain available witnesses. *United States v. Aviles,* 623 F.2d 1192, 1195 (7th Cir.1980).

Since the Act explicitly rejects "general congestion of the Court's calendar" as a ground for an excludable continuance, it is unlikely that Congress meant congestion in the FBI lab to be a ground for excludable delay in granting a continuance. See, *United States v. Janik,* 723 F.2d 537, 543 (7th Cir. 1983). Likewise, when the Act explicitly rejects lack of diligence in case preparation by the prosecuting attorney as a ground for excludable delay, it seems unlikely the Congress meant lack of diligence by the FBI lab would be an avenue to exclude time from the speedy trial computation.

To accept the government's implicit rationalization of "the interests of justice" continuance in this case requires that I ignore the spirit, if not the letter, of 18 U.S.C. § 3161(h)(8)(C). Here the FBI, acting on behalf of the United States, had all the pertinent evidence in its possession, custody and control for over a year. What happened with

the evidence may be explained by the FBI's workload. However, when balancing the demand of Congress that the Public and the Defendant have a statutory right to a speedy public trial, the rights of the defendant cannot be compromised by the Bureau's administrative processing of evidence. Thus, the Government either complies with the Rules of Criminal Procedure, or as here, when it fails to do so, the defendant cannot be charged with the problems of bureaucracy. The lack of diligence by the FBI in processing evidence, and the congested workload of the FBI lab do not constitute a factual basis to exclude time from the Speedy Trial computation "in the interests of justice." 18 U.S.C. § 3161(h)(8)(A).

The delay caused by the continuance in this case is not excludable time under the Speedy Trial Act. 18 U.S.C. § 3161(h)(8)(C), 18 U.S.C. § 3161(h)(8)(A).

### D. Past sexual conduct

Evidence of the alleged victim's past sexual conduct generally should not be admitted. Fed.R.Evid. 412 limits the admissibility of evidence of a rape victim's past sexual behavior to three situations: 1) when constitutionally required; 2) when relevant and more probative than prejudicial on the source of semen or injury; and 3) when relevant and more probative than prejudicial on the issue of consent. United States v. Payne, 944 F.2d 1458, 1468 (9th Cir.1991).

The issue here is whether or not the defendant's semen was present in the victim after the alleged rape. Evidence that semen from two different sources may be present does not exclude the defendant as a potential source of the semen. Nonetheless it may be relevant to "prove that a person other than the accused was the source of semen, injury or other physical evidence." See FedR.Evid. 412(b)(1)(A). The victim's past sexual conduct is not relevant in excluding the defendant as a source of semen, especially where there is DNA evidence available. But the evidence may corroborate Dog Taking Gun's view that the harm was caused by someone other than him.

Dog Taking Gun argues that another male, without active semen, is an alternative source of semen. Because the defendant's semen is allegedly active, he claims the inactive semen is relevant to show that one of the semen samples taken from the victim is not the defendant's. He then argues the proof will show the other "source" caused the injury. The DNA evidence that will be introduced is likely to either exonerate him or to link the Dog Taking Gun to the crime. The presence of semen other than the defendant's does not make the presence of the defendant's semen more or less true. It may bear on the question of who injured the putative victim, depending on the other evidence.

The existence of semen is an issue of evidence raised by the government through its blood samples, saliva samples, and the DNA proof it proposes. Where the government assiduously avoids introduction of semen evidence, the defendant cannot bootstrap himself into an exception in Rule 412(b)(1), F.R.Evid. Such is not the case when the defendant denies culpability and DNA evidence involving semen is used to prove the case. See, United States v. Richards, 118 F.3d 622, 623 (8th Cir.1997).

### III. Conclusion

The trial is continued to allow the defendant sufficient time to conduct testing of the DNA samples that the government intends to use against him at trial.

Evidence of the alleged victim's past sexual conduct may be admissible. The exceptions in Rule 412 may apply to the circumstances of this case, especially in light of the government's DNA proof. On proper motion, a Rule 412(c)(2) hearing will be conducted in Missoula.

The time between May 11, 1998 and the date of this order is excludable time under the provisions of the Speedy Trial Act. 18 U.S.C. § 3161(h)(1)(F). The time between the date of this order and the new trial date, September 21, 1998, is not excludable in calculating the time limits of the Speedy Trial Act. 18 U.S.C. § 3161(h)(8)(C), 18 U.S.C. § 3161(h)(8)(A).

The Clerk is directed to immediately notify the parties of the entry of this order.